[File No. 6668.]

ELIN S. RASMUSSEN, Respondent, v. THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK,

and

JENS C. RASMUSSEN and Julia Rasmussen, Appellants.

(293 N. W. 805.)

Opinion filed August 13, 1940. Rehearing denied September 17, 1940.

*Bangs, Hamilton & Bangs,* for appellants.

*H. A. Bronson,* for respondent.

*Fuller & Powers,* for respondent.

MORRIS, J. This is an action upon a life insurance policy issued by the Mutual Life Insurance Company of New York on August 21, 1909, upon the life of Leo M. Rasmussen. The plaintiff is the widow of the deceased. The defendants Julia Rasmussen and Jens C. Ras-

mussen are the parents of the deceased insured, and are the beneficiaries named in the policy.

The action was tried to the court without a jury and is here for trial de novo upon appeal by the defendants Julia Rasmussen and Jens C. Rasmussen from a judgment in favor of the plaintiff. The defendant Mutual Life Insurance Company of New York is merely a stakeholder and tenders the proceeds of the policy to abide the order of the court.

At the time the policy was issued, the insured was unmarried. He married the plaintiff on September 5, 1911.

In 1916 the insured made a loan on the policy and assigned the policy to the Company as security. That loan was later cancelled by a new loan made in 1918. The policy reserved to the insured the right to change the beneficiary, provided that there was no outstanding assignment thereof.

In 1920 the insured requested a change of beneficiary from his parents to his wife, the plaintiff in this action. In response to this request, the Insurance Company advised him that due to the loan on the policy, the beneficiary could not then be changed. It also advised him that he might make an assignment of the policy, but that it would be necessary for his parents to join in the assignment. The company inclosed, with its communication, a form of assignment, which was never executed.

In 1925 the insured again requested the Company to change the beneficiary, and the Company's district manager at Grand Forks transmitted this request to the Company and was advised that due to the fact that there was a loan and an existing assignment of the policy the change of beneficiary could not be made, but that an assignment could be made by having the parents join therein. Again nothing further was done by the insured to effect an assignment. The request for the change in beneficiary was retained by the Company and never returned to the insured.

The loan and interest, together with the premium on the policy, became due on August 21, 1927, and no payments thereon were thereafter made. On November 22, 1927, the amount due on the loan was deducted from the cash surrender value and the balance of that value applied on the purchase of nonparticipating, paid-up, extended insurance in accordance with the terms of the policy. The policy was

indorsed as of August 21, 1927, to indicate this insurance in the amount of $1,480 for seventeen years and seventy-eight days. The policy was returned to the insured with a letter advising the insured as to what had been done. The policy was still payable to the parents.

The insured died on December 21, 1938, without having communicated further with the Company regarding either a change of beneficiary or an assignment of the policy. After his death, the policy was found among his private papers in a box in a safe at the store where deceased had been employed.

The policy reserved the right of the insured to change the beneficiary "by filing written notice thereof at the Home Office of the Company, accompanied by the Policy for suitable indorsement thereon. Such change shall take effect upon the indorsement of the same on the Policy by the Company." Where the policy contains such a reservation, the designated beneficiary acquires no vested interest therein; and the insured may change the beneficiary at will. Taylor v. Grand Lodge, A. O. U. W. 45 N. D. 468, 178 N. W. 130; Jorgensen v. DeViney, 57 N. D. 63, 222 N. W. 464.

In this case, therefore, there is no doubt but that the insured could have changed the beneficiary in the policy, and that his notice to the Company would have resulted in such a change had the policy not been under assignment at the time his requests were made.

The plaintiff argues that the insured attempted in good faith to change the beneficiary to her, and did all that was within his power to do to make such change. She seeks to invoke the rule that where the insured has done substantially all that is required of him to effect a change of beneficiary, and nothing remains to be done but ministerial acts of the insurer, its officers or agents, equity will consider that as done which ought to be done and will give effect to the change, though the formal details thereof were not completed before the death of the insured. This rule is widely accepted and generally applied. Couch, Insurance, § 324; Cooley, Briefs on Insurance, p. 3769. This court has approved the rule in Taylor v. Grand Lodge, A.O. U. W. 45 N. D. 468, 178 N. W. 130, supra.

The controversy in this case is not as to what the rule is, but whether it applies under the facts here disclosed. This rule has been developed through the efforts of courts to give effect to the intention of the

insured in order that the proceeds of insurance on his life may go to the beneficiary to whom he wished it to go and to whom he attempted to make it payable, and to avoid the thwarting of the insured's intention in that respect by the presence of technicalities.

An examination of the record in this case discloses that at the time the requests for change in beneficiary were made, the insured was not entitled to make the change under the terms of his policy. He was so informed by the Company. He, therefore, labored under no misapprehension that the change had been made at the time of the request. Moreover, the Company said nothing to lead him to believe that it would make the change at some future time.

The last request was made and denied in 1925. The plaintiff contends that the court should assume that the deceased intended that this request should continue alive and become effective whenever the policy became subject to a change in beneficiary. Subsequent facts weigh heavily against the plaintiff's contention. The policy did not become subject to a change in beneficiary until two years later when, in 1927, the Company paid itself out of the cash surrender value of the policy and indorsed the policy with an extended term indorsement. The policy was returned to the insured on November 28, 1927. It was still payable to the original beneficiaries. The insured kept the policy in his possession until his death in December, 1938, a period of over eleven years. During that time he did not further communicate with the Insurance Company. These facts are strong circumstances, indicating that the insured no longer intended to change the beneficiary to the plaintiff. We have been able to find no case where the equitable rule above referred to has been applied under such circumstances.

The plaintiff seeks to lay a foundation for the applicability of the rule to the facts in this case in her testimony wherein she says: "Leo told me, in case anything should happen to him, what to do with the holdings he at that time had, and he referred to this policy as the smaller policy, and he said to 'take this and pay up any outstanding indebtedness that we have and then you can do whatever you like with anything else.'"

It is argued that the insured did not know that the policy, which

was in his possession for over eleven years, was not payable to the plaintiff. This conclusion, however, cannot be sustained in the face of the testimony of the witness Owen, who testified to a conversation had with the insured a short time before his death. This witness says that the insured asked him to come over to his residence, that the insured on that occasion knew that he was about to die, and talked over his financial affairs with the witness. Concerning this conversation, Owen testified, "He said he had a good policy for his wife and he had a policy to his father and mother. . . ."

"Q. And that he wanted that left that way for them, is that correct?

"A. He said he wanted that to be used for burying him and paying for his lot in the cemetery.

"Q. That he was leaving it with his father and mother?

"A. He said the policy was payable to them.

"Q. Yes. Now, was that the last conversation that you had with Leo regarding insurance?

"A. That was the last time I saw Leo alive."

The record discloses that the deceased had but two life insurance policies—one for $9,025 payable to his wife; and the other, the policy in controversy in this case.

We have carefully examined the entire record from which it appears that the policy in question on the life of Leo Rasmussen is payable on its face "to his parents Julia and Jens C. Rasmussen, share and share alike, or the survivor of them, the beneficiaries, with the right of revocation;" and that at no time during which the policy was subject to a change in beneficiaries did the insured attempt or intend to change the beneficiaries therein named; and that the rule whereby the courts will give effect to an attempted, but incompleted, change of beneficiary is not applicable to the facts in this case.

The defendant, the Mutual Life Insurance Company of New York, filed an answer and cross-complaint wherein it set forth the facts as disclosed by its records, and alleged that by reason of the conflicting claims, it does not know and is in doubt as to whom the proceeds of the policy shall be paid. It then tendered the sum of $1,491.02 into court to abide the order thereof.

It is suggested that the conditions in the policy affecting the desig-

nation or change of beneficiary are for the benefit of the insurer and are waived by paying the amount of the insurance into court. The weight of authority holds that an insurer may waive strict compliance with requirements as to the method of changing beneficiaries in so far as its own right to object to the change is concerned. 14 R. C. L. 1396.

By its answer and cross-complaint in this case, the Company admits its liability to the extent of the sum tendered, but makes no attempt to assert who is entitled to the money. The tender is clearly for the limited purpose of having determined who is entitled to the proceeds of the policy, and no attempt is made to waive or prejudice the rights of any claimant.

Upon the death of the insured, rights to the insurance proceeds became vested. It is for the court and not for the Company to determine in whom they vested. Where rights to insurance proceeds have become vested upon the death of the insured, the insurer may not by subsequent waiver deprive the proper beneficiary of those rights. Stemler v. Stemler, 31 S. D. 595, 141 N. W. 780; Grant v. Faires, 253 Pa. 232, 97 A. 1060; Knights of Maccabees v. Sackett, 34 Mont. 357, 86 P. 423, 115 Am. St. Rep. 532; Independent Order of Foresters v. Keliher, 36 Ore. 501, 59 P. 324, 1109, 60 P. 563, 78 Am. St. Rep. 785; Modern Woodmen v. Headle, 88 Vt. 37, 90 A. 893, L.R.A.1915A, 580; Kelley v. McDonald (Tex. Civ. App.) 83 S. W. (2d) 414; Couch, Insurance, § 321; 14 R. C. L. 1396.

The facts do not disclose such an attempt on the part of the insured to change the beneficiary as will entitle the plaintiff to the proceeds of the policy. The rights of the beneficiaries named in the policy have not been waived. They are entitled to the proceeds thereof.

Reversed.

NUESSLE, Ch. J., and CHRISTIANSON, BURR, and BURKE, JJ., concur.