**WESTERN AND SOUTHERN LIFE INSURANCE COMPANY, Plaintiff, v. HAGUE, Admr., Defendants.**

Common Pleas Court, Franklin County.

No. 194158.    Decided October 20, 1956.

Wright, Harlor, Purpus, Morris & Arnold, Alexander, Ebinger and Wenger, Vorys, Sater, Seymour and Pease, for interpleading insurance companies.

## OPINION
DECISION IN FAVOR OF ADMINISTRATOR AND AGAINST FORMER WIFE OF INSURED DECEDENT—AS PER OPINION.

By HARTER, J.

While an examination of the foregoing caption would tend to indicate that a relatively complex situation, both on the facts and the law, was presented in these cases, actually the problems are relatively simple.

The four named insurance companies brought the following respective sums into court by interpleader:

| | |
|---|---|
| Western and Southern Life Ins. Co. | $2,018.51 |
| Metropolitan Life Ins. Co. | 2,019.81 |
| North American Life Ins. Co. | 1,000.00 |
| Equitable Life Assurance Soc. | 5,020.46 |

By the "Orders of Interpleader," this Court required that Joseph R. Hague, as administrator of the estate of Edward O. Davis, deceased (who was the named insured in each of the four policies) and Alkie Carter (who was named as beneficiary in each policy under variations of the name of "Alkie C. Davis," his wife) appear and maintain their respective claims to the proceeds of the policies.

There was no change of beneficiary made between the date of the divorce (October 3, 1955) and the date of the named insured's death (October 13, 1955).

The two parties, Hague, as Administrator, and Alkie Carter, did appear, filed their pleadings and then, separately, moved for judgment in their respective favors. There is no disputed question of fact; the whole problem is one of law.

The whole problem revolves around one paragraph in the **Separation Agreement** which, after being executed by the named insured and Alkie Carter, was found by the Court of Domestic Relations (which granted the divorce) to be "fair, equitable and just" and was, by such Court, "made a part of this Decree." The material paragraph reads:

"9. The said Alkie Davis hereby waives and releases all of the right, title and interest, including her right of dower, in any and all property, whether real or personal, now owned by the said Edward O. Davis, or of which he may become the owner in the future, or of which he may die possessed, and it is clearly understood that she shall be solely liable for any and all debts and obligations hereafter incurred by her."

Did this language of the **Separation Agreement**, as adopted into the **Divorce Decree**, bar the divorced wife from receiving the proceeds of the four life insurance policies in which she was, admittedly, still named as the beneficiary at the time of the named insured's death? This Court believes that upon reason and authority, Alkie Carter's rights **are barred,** and that the deceased's estate should be entitled to all of the proceeds of the policies.

We will explain our position. In the first place, it is abundantly clear that Davis, the decedent, retained all of the incidents of ownership, including the right to change beneficiaries, of these four policies.

The Western and Southern policy provided: "Any beneficiary or contingent beneficiary may be changed from time to time prior to surrender, maturity or expiration * * *." Mechanical steps for effecting such change of beneficiary are also provided by the policy.

A comparable provision is found in the Metropolitan policy in this language:

"A new designation of Beneficiary or a new designation of contingent Beneficiary may be made by the person or persons entitled to do so (see Provision 1) with or without reserving the right of change thereafter * * *."

When reference is made to "Provision 1," we are, in turn, directed to the face of the policy where the recital is expressly made that "The right on the part of the Insured to change the beneficiary is reserved."

The North American policy recites: "The insured * * * may, while the policy is in force designate a new beneficiary * * *."

The final policy, that of the Equitable, provided the "Owner may change the beneficiary from time to time prior to the death of the Insured, * * *." The policy form used by the Equitable leaves much to be desired from the stand point of clarity in expressly differentiating between the "owner" and the named "Insured," but, by examining the photostatic copy of the "application" which is made a part of the

policy, we find that the decedent applied for a policy which would provide "with the right to change the beneficiary, the right to assign the policy, and the other 'Policy Rights' reserved to me." Since this was his "offer" and the policy was issued pursuant to that "offer," we believe this Court should read the policy and the offer together and conclude that Davis was, in fact and law, its "owner."

Under these policy provisions, and but for the ninth paragraph of the Separation Agreement, we would have no hesitancy in applying the general rule that "the rights of the beneficiary in an ordinary life insurance policy, including the right to receive the proceeds thereof upon maturity of the policy, are in no way affected by the mere fact that the parties are divorced subsequent to the issuance of the policy" (The quoted language is from 29 American Jurisprudence, page 977).

Again, however, we must return to the recitals of the ninth paragraph of the Separation Agreement because there is a well recognized exception to the general rule, just stated—the exception is that "the rights of the beneficiary to the proceeds of a policy upon the life of a divorced spouse may be terminated * * * by an agreement of the parties which may be reasonably construed as a relinquishment of the spouse's rights to the insurance * * *" (This quoted language is from 29 American Jurisprudence, Volume 29, page 978.)

The older cases supporting this exception are fully annotated in 52 A. L. R. 400, 59 A. L. R. 172, and 175 A. L. R. 1230. No useful purpose would be served by setting forth a review of those cases in this opinion. The annotations may be examined. Suffice it to say, the exception is well supported by authority.

To appraise, specifically, the language of the Separation Agreement, Alkie Davis waived and released her right, title and interest in all real and personal property "now owned by the said Edward O. Davis." Our problem is: Were the insurance policies "owned" by Davis on the date the Separation Agreement was executed? We think they were. Had the husband wished to cash-in his policies that day, he could have done so without the consent of Alkie Davis. Had he wished to obtain paid-up insurance (for a lesser amount than the face of each policy) he could have done so that day without the consent of Alkie Davis. Had he desired to change beneficiaries that day, he had a right, clearly granted to him, not to her to do so without her consent or cooperation.

The confusion in approaching the problem of what rights an insured person has in the policies of insurance upon his life grows out of the fact that the policy contract, itself, provides for the distribution of policy proceeds. It is unlike most contracts as to which the statutes of "descent and distribution" or "administration of estates" dictate the method of distribution. Actually, a policy of life insurance is merely a chose-in action; choses-in-action are "owned" by the person having title to them just the way he owns his other chattels. He may do with them as he pleases without the leave or consent of any other party. Should he die, his estate succeeds to his ownership of his choses-in-action just the way the estate succeeds to the ownership of his other chattels.

The beneficiary named as his designee to receive the proceeds upon

his death will, of course, normally collect such proceeds; however, if that designee has barred herself from collecting such proceeds by her own voluntary act, an act performed before her rights became vested, she cannot collect, and the proceeds should go directly to the owner's administrator. Technically, it might be possible that the beneficiary should recover the proceeds and hold them in trust for the administrator, but no court should require such a round-about solution to the problem when all the parties can be bound by an order in a single law suit.

Both parties who now seek recoveries of the proceeds of these four policies rely upon the same decision of the Montgomery County Court of Appeals as the basis for their respective claims. One or the other of the parties is wrong in their interpretation of that case. The case in question is **Hergenrather v. State Mutual Life Insurance Co. (1946), 79 Oh Ap 116**, 68 N. E. (2d) 833. The language of the Separation Agreement involved in that case was significantly different from that of the one here involved. The significant difference was in a barring of rights "which may come in any manner, arise or accrue, by virtue of said relationship (as husband and wife) * * *." Our Court of Appeals there used this language:

"Did the separation agreement by its terms operate as a relinquishment of her rights to the proceeds of the policy? We do not think so. Her right did not 'come in any manner, arise or accrue by virtue of said relationship' as provided in the separation agreement. Her right did not arise out of the relation of husband and wife. True, she was his wife at the time the policy was issued and this fact undoubtedly was the reason why she was named as beneficiary, but her property interest in the policy did not arise out of the marriage relation. * * *."

There is a further significant differentiation in that Hergenrather case in that the Court there said "There is no allegation in the pleadings to indicate whether the insured reserved the right to change beneficiaries." In our case, as heretofore expressly detailed, each policy authorized Davis to change beneficiaries.

How are the two clauses so radically different in the results which flow from their application to substantially identical fact patterns? In our Davis case, the release was as to "any and all property, whether real or personal, **now owned** by the said Edward O. Davis * * *." In the Hergenrather case, the release was as to "any and all rights or claims by way of death, inheritance, descent * * * and all rights or claims as widow, widower, heir, distributee, survivor or next of kin, and all other rights or claims whatsoever in or to the estate of the other * * * whether now owned or hereafter acquired **which may come in any manner,** arise or accrue, by virtue of said relationship. * * *"

In the two clauses, the approach is different. In ours, the parties were dealing with **all** their property; in the Hergenrather case, they were dealing only with such property as came from, arose or accrued **by virtue of the marriage.** The latter approach is obviously a much narrower one than was the case in our Davis separation agreement. Had the Davis language contained the "arising from the marriage relationship" limitation, the conclusion in this Davis case would have been

264

identical to the Hergenrather result; without such words of limitation, the case must, as we see it, be decided the other way.

The case of John Hancock Mutual Life Insurance Co. v. Soluri (Wash. 1955) 283 P. (2d) 119, is one of the most recent, well-reasoned opinions on the problems inherent in the present litigation. It brings the various California cases into proper focus. It recognizes that, because of different language in each separation agreement or divorce decree, and different collateral facts, each case must be decided on its own facts. Its basic rules are applicable to our Davis facts, and, in this Judge's opinion, require a decision in favor of the Davis estate, and against the divorced wife.

The Journal Entry on this ruling may, of course, reserve exceptions to Alkie Carter.