No. 47,886

Judy Ann Hollaway, *Appellee*, v. Rosalyn L. Selvidge, *Appellant.*

Rosalyn L. Selvidge, *Appellant,* v. Judy Ann Hollaway, Individually and as Administrator of the Estate of Leo A. Hollaway, Deceased, *Appellee.* In the Matter of the Estate of Leo E. Hollaway, Deceased. (Rosalyn L. Selvidge, *Appellant,* and Judy Ann Hollaway, Administrator, *Appellee.*)

(548 P. 2d 835)

Opinion filed April 10, 1976.

*Ted F. Fay, Jr.,* of Hugoton, argued the cause, and *B. E. Nordling* and *Leland E. Nordling,* both of Hugoton, were with him on the brief for the appellant.

*Jeff Johnson,* of Hugoton, argued the cause, and *Paul A. Wolf,* of Hugoton, was with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: This proceeding involves the distribution of life insurance and other benefits payable as a result of the death of Leo E. Holloway. Appellant Rosalyn L. Selvidge, the divorced wife of decedent, claims the proceeds as a named beneficiary while appellee Judy Ann Hollaway claims them as administrator of decedent's estate and as his widow. The primary issue is the construction and effect of a property settlement agreement entered into between Rosalyn and the decedent in connection with their divorce.

The facts were stipulated in the trial court. Rosalyn was married to Leo May 16, 1969. During this marriage Leo was employed by the Kansas state highway department and became eligible for benefits under the Kansas public employees retirement system (KPERS). He designated "Rosalyn L. Hollaway" as his beneficiary for contributions under the system and in a Security Benefit Life Insurance policy furnished pursuant to K. S. A. 74-4927. Leo had the right in each of these to change the beneficiary without the beneficiary's consent.

During his marriage to Rosalyn, Leo also purchased a disability and accident policy from the Globe Life and Accident Insurance Company. The policy provided for payments for disabling injuries according to a schedule and a $10,000 payment for his accidental death. The beneficiary under this policy was designated by Leo as "Rosalyn and/or Leo Holloway". By the terms of this policy Leo was the insured and had the right to change the beneficiary without Rosalyn's consent.

On December 12, 1972, three and one-half years after Leo and Rosalyn were married, Leo obtained a divorce. In contemplation of the divorce the parties entered into a written property settlement agreement dated October 10, 1972, to be examined in detail later. The agreement was approved by the court and incorporated into the divorce decree.

On April 6, 1973, Leo married Judy Ann Hollaway. Seven weeks later, on May 25, 1973, he was accidentally killed in the course of his employment. There is no evidence that Leo ever attempted to change the beneficiary designation in the Globe insurance policy before his death. This policy required Globe's approval and endorsement of the change on the policy for any change of beneficiary to be effective.

On May 18, 1973, seven days before his death, Leo advised his immediate superior, the Stevens county engineer, and the secretary for the Stevens county highway department that he wanted to designate Judy Ann Holloway as his new beneficiary under KPERS, including the SBL insurance policy and his accumulated contributions to the system. The secretary made a pen and ink change on KPERS printed form entitled "Annual Statement of Members Account—Year Ended December 31, 1972", crossing out the name "Rosalyn L. Hollaway" which appeared on the form under the heading of "BENEFICIARY NAME" and writing beneath it "Judy Ann, wife".

At the same time Leo was advised by the Stevens county clerk (who was Leo's employer's designated agent for communications with KPERS under K. S. A. 74-4902 [6]) that the proper forms to change his KPERS beneficiary were not available locally but would be requested from KPERS. At some time prior to May 29, 1973, the county clerk wrote KPERS and requested a KPERS form 46 which she believed was the proper one to effect a change of beneficiary. On May 29, 1973, the chief of the enrollment section of KPERS at Topeka wrote the county clerk that form 46 is a record change used internally only and is not to be used by the participating employer. He enclosed a form 7 which was to be used when a member makes a change in his beneficiary. (The litigants here agreed in their stipulation that certain policy guidelines in the hands of Stevens county officials listed form 46 as available to participating employers but failed to show it in a listing of forms exclusively for use of KPERS office.) No form was ever furnished to Leo before his death for him effectively to change his beneficiary under KPERS.

Following Leo's death Judy attempted unsuccessfully to collect the KPERS benefits and the proceeds of the two insurance policies, with the result three lawsuits were filed: (1) A declaratory judgment action by Judy in the Stevens county district court whereby she claimed the KPERS benefits and the SBL insurance (case No. 5129); (2) a similar suit by Rosalyn respecting the Globe insurance (case No. 5158); and (3) a petition by Rosalyn in the probate court of Stevens county for allowance of demand against Leo's estate embracing the Globe policy, which proceeding was transferred to district court (case No. 5238). Meanwhile Judy had been appointed administrator of Leo's estate. KPERS and the two insurers paid into district court the money due for accrued contribu-

tions and under the two policies, and were dismissed from the actions. Issues were joined by the two remaining contestants, the three cases were consolidated for trial and the matter was heard by the trial court upon a written stipulation of facts essentially as stated. The trial court rendered judgment for Judy and against Rosalyn in all three cases, based upon the following conclusions of law:

"1. The Globe Life and Accident Insurance Company Policy No. 1372668 and the Security Benefit Life Insurance Policy under the Kansas Public Employees Retirement System were the sole property of the decedent under the property settlement agreement approved by this Court in Case No. 5073, Leo E. Hollaway vs. Rosalyn L. Hollaway. In this action Rosalyn's last name was restored upon her request to Rosalyn Juarez. Under paragraphs 6 and 9 both parties to that action agreed to relinquish all of their right, title and interest in property of the other and 'each party agrees never to set up any claim to any of the property herein allotted to the other . . .' As a result this Court concludes that Claimant Rosalyn Selvidge, formerly Rosalyn Hollaway, is barred from claiming any portion of the above insurance policies.

"2. In addition to the above the Court finds the decedent did everything within his power to change the beneficiary under the 'KPERS' policy and was precluded from doing so only because the form to do so was not available and/or was not known to the administrative agents of the insurance company."

The court also entered a third conclusion favorable to Judy respecting the Globe policy, which need not be stated in view of our ultimate disposition.

Rosalyn has appealed from the adverse judgments.

In the absence of terms in an ordinary life insurance policy that the rights of the beneficiary are conditioned upon the continuance of the marriage relation then existing between the beneficiary and the insured, or the regulation of the matter by statute, the general rule is that the rights of the beneficiary are in no way affected by the fact the parties are divorced subsequent to the issuance of the policy, especially if no attempt is made to change the beneficiary and the insured continues to keep up the payments on the policy (4 Couch on Insurance 2d, § 27:111, p. 647-648; accord: *Tromp v. National Reserve Life,* 143 Kan. 98, 53 P. 2d 831). Hence the mere fact decedent and appellant were divorced would not preclude appellant from claiming the policy proceeds as long as she is the named beneficiary under the policies.

However, it is well settled that as part of a separation or property settlement agreement a wife may, upon divorce, contract away her right to claim insurance proceeds from policies on her husband's life in which she is named as the beneficiary (4 Couch on Insurance 2d,

§ 27:114, p. 655). The primary rule of construction of a settlement agreement in connection with a divorce action is that, if possible, the court must, as in other contract cases, ascertain and give effect to the mutual intention of the parties at the time the contract was made (*Washburn v. Washburn*, 204 Kan. 160, 460 P. 2d 503). Thus the rights of a beneficiary to the proceeds of an insurance policy upon the life of a divorced spouse may be terminated by an agreement between the parties which may be reasonably construed as a relinquishment of the spouse's rights to the insurance (44 Am. Jur. 2d, Insurance § 1740, p. 651).

At this point we should note the nature of a beneficiary's interest under a life insurance policy where the insured can change it without the consent of the beneficiary. "Where a right to change the beneficiary is reserved in the policy, the beneficiary has no vested or indefeasible interest during the lifetime of the insured, but only a revocable expectancy contingent upon being the beneficiary at the time of the insured's death. A beneficiary has only an inchoate right to the proceeds of a policy, subject to being divested at any time during the lifetime of the insured, by transfer, assignment, or change of beneficiary, or in some cases by the death of the beneficiary before the insured" (4 Couch on Insurance 2d, § 27:58, pp. 561-564). (Accord: *Antrim v. International Life Ins. Co.*, 128 Kan. 65, 275 Pac. 1084; *Tromp v. National Reserve Life*, supra.)

What did the parties here say in their separation agreement in the divorce action? We quote in pertinent part:

". . . WHEREAS, the parties desire to make amicable adjustment and settlement of all property rights and claims between them and all claims of Rosalyn for alimony and support, except as herein provided.

"Now, THEREFORE, in consideration of the mutual advantages to be obtained and for the consideration hereinafter stated, the parties herewith stipulate and agree as follows as to all rights and claims of either party in the event a decree of divorce is granted to either party:

"1. That neither party shall make any claim, except as herein agreed, and this settlement shall be in full of any and all rights by and between the parties growing out of their marital relationship.

[Paragraphs 2, 3, 4 and 5 gave each party certain items of real and personal property and stated responsibility for their indebtedness; it also gave to Leo: "All other property owned by the parties not herein specifically described". Insurance policies or KPERS benefits were not mentioned]

"6. Each of the parties agrees to relinquish all of his or her right, title and interest in the property herein allotted to the other.

"7. In consideration of the foregoing provisions, Rosalyn forever releases Leo from any and all obligations to support her and from any and all obligations or claims for alimony, temporary and permanent, except as herein provided.

Rosalyn further acknowledges full satisfaction of any and all claims she has or claims to have in or to any and all of Leo's property, except as herein provided.

[Paragraph 8 provided for restoration of appellant's maiden name]

"9. The parties further agree that the above and foregoing settlement and stipulation is a full, fair, equitable and complete settlement of all rights in any property owned or possessed by them jointly or separately. Each party agrees never to set up any claim to any of the property herein allotted to the other or any after-acquired property, each party specifically waiving herein their right of inheritance to the property of the other. It is further agreed that each of the parties will execute any and all papers necessary to complete the transfer of any property herein allotted to the other, if such papers or conveyances are required to be signed or request is made for such signing."

The agreement was approved by the divorce court and there is no question as to its validity or the good faith of the parties in executing it. What did they mean? In their last "Whereas" clause they stated their desire not only to settle "all property rights" but all "claims between them" plus all claims of appellant for alimony and support. In the next clause they said they were agreeing as to "all rights and claims of either party in the event a decree of divorce is granted either party". In paragraph 1 they stated that "neither party shall make any claim, except as herein agreed, and this settlement shall be in full of any and all rights by and between the parties growing out of their marital relationship". In paragraph 6 each party relinquished his or her right, title and interest in the property allotted the other, and in paragraph 7 appellant specifically relinquished any claim for alimony or support and acknowledged full satisfaction of any "claims she has or claims to have" in any of Leo's property. Finally, in paragraph 9 they reiterated their agreement was in complete settlement of "all rights in any property owned or possessed by them jointly or separately" and each agreed never to set up any claim to the property allotted to the other.

We recognize that each case of this kind must be decided on its own facts in determining the parties' intention. Here the settlement was sufficiently comprehensive in nature to demonstrate an intent to embrace and settle all the parties' affairs of whatever nature. They broadly agreed to settle all rights and claims between them and each relinquished all right, title and interest in the property of the other. As named insured in the two insurance policies Leo became their owner and they were his property. Similarly the KPERS contributions belonged to him and were his property within the meaning of the agreement. We think a fair reading

of it amounts to a relinquishment of appellant's inchoate rights or expectancies both to the insurance proceeds and the KPERS benefits and the decedent's estate is therefore entitled to them. As was said by Judge John Minor Wisdom in *Stone v. United States*, 272 F. 2d 746, in commenting on separation agreements in that case and in *O'Brien v. Elder*, 250 F. 2d 275, wherein as here, insurance proceeds were claimed by a named beneficiary who had been divorced from the decedent: ". . . the agreements were meant to accomplish the same object: to wipe the slate clean between the parties". (p. 750.)

By reason of the separation agreement appellee as administrator of Leo E. Hollaway's estate is entitled to the moneys paid into the trial court and it is so ordered. Judgments affirmed in accordance with the foregoing.

APPROVED BY THE COURT.