Bonnie J. NUNN, Individually and as Personal Representative of the Estate of Jay W. Nunn, Deceased, Plaintiff and Appellant,

v.

EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES, NCR Corporation, a Foreign Corporation; and Carol Wink Schaeffer, formerly Carol Wink Nunn, Defendants and Appellees.

Civ. No. 9494.

Supreme Court of North Dakota.

Nov. 28, 1978.

Rehearing Denied Jan. 10, 1979.

E. J. Rose, Bismarck, for plaintiff and appellant.

McGee, Hankla, Backes & Wheeler, Minot, for defendant and appellee, Carol Wink Schaeffer, argued by Richard H. McGee II, Minot.

Fleck, Mather, Strutz & Mayer, Bismarck, for defendants and appellees, Equitable Life Assurance Society of the United States and NCR Corporation; no appearance.

ERICKSTAD, Chief Justice.

This appeal involves a contest over the proceeds of a group life insurance policy issued by Equitable Life Assurance Society on the life of Jay W. Nunn. Bonnie J. Nunn, surviving spouse and personal representative of the estate of Jay W. Nunn, appeals from a summary judgment in favor of Carol Wink Schaeffer, divorced wife of Jay Nunn, granted on the grounds that Carol is the named beneficiary of the policy. We affirm.

Jay W. Nunn married Carol Wink on October 3, 1969, and began work at the National Cash Register Corporation (NCR) in the summer of 1970. During his employment at NCR, Jay participated in a group insurance plan provided by the Equitable Life Assurance Society of the United States. Jay had life insurance through two policies: Policy No. 4031 provided straight life insurance, and Policy No. 4031D provided, among other things, double indemnity recovery for accidental death. On July 11, 1970, Jay entered Carol Wink Nunn's name on the enrollment record as his beneficiary under the life insurance policies.

Jay and Carol Nunn were divorced on September 10, 1974, and both parties remarried. Although the judgment and decree of divorce included a property settlement, the insurance policies were not specifically mentioned. Jay did not change the beneficiary of his life insurance policies, and on November 10, 1976, he died from a gunshot wound.

On November 15, 1977, Bonnie Nunn brought a declaratory judgment action against Carol Wink Schaeffer, Equitable Life Assurance, and NCR, to have herself or the estate declared the beneficiary of the insurance policies. Carol counterclaimed on the grounds that she is the rightful beneficiary, and cross-claimed against Equitable and NCR for the life insurance proceeds. Equitable Life Assurance and NCR admit liability and stand willing to pay on Policy No. 4031, but deny liability under Policy No. 4031D, the double indemnity policy.

Carol moved for summary judgment on the grounds that she was entitled to the insurance proceeds because she was the named beneficiary, and the district court granted the motion. The issue of double indemnity has not yet been litigated.

Bonnie appeals from the district court's judgment to this court.

Bonnie argues that the decedent did not take any action to change beneficiaries on the policy because he was under the mistaken impression that no change was necessary. The district court assumed, for purposes of the summary judgment motion, that "the plaintiff could establish at a trial that the decedent mistakenly believed his widow was entitled to the proceeds of the policy and that this was in accordance with his intentions." The district court, nevertheless, granted Carol's motion for summary judgment:

"The plaintiff is in this case arguing that in effect the person entitled to the pro-

ceeds of the policy is *whoever the decedent intended it to be,* even if not the named beneficiary. It requires little imagination to envision the mischief that would be caused by the adoption of such a rule. Disputes among friends, relatives, and heirs of the decedent would be a regular occurrence. Insurance companies presumably invariably deposit the proceeds in court because they could not rely on their records. The adoption of such a rule, in the long run, would be detrimental to the administration of justice, just as it would be if permitted in the case of wills or land transfers.

"It should also be observed that we are not dealing here with a situation in which the decedent did anything within his power to effectuate his intention. The problem was caused by the decedent's own carelessness. It would have been a simple matter for him to determine who was, in fact, the beneficiary of the policy. The result may be unfortunate, but that condition alone no more furnishes justification for the Court to intervene than it would in the case of errors of judgment or frustrated expectations in the case of contracts generally."

Although Bonnie acknowledges the general rule that the named beneficiary is controlling, she argues that the insurance policy in this case is unique because it is a group policy. Bonnie argues that there was no insurance policy or certificate of coverage issued to decedent, no premium payment, and no vested interest or property interest of any kind. Thus, Bonnie submits that the decedent's mistaken belief arose from "the failure of the employer and/or insurance company to advise the decedent in anyway as to his rights under the policy."

■ Although we have recognized that a decedent's intent may be important in determining who is entitled to the proceeds of a policy, *see Rasmussen v. Mutual Life Ins. Co. of New York,* 70 N.D. 295, 293 N.W. 805 (1940); *Taylor v. Grand Lodge A.O.U.W.,* 45 N.D. 468, 178 N.W. 130 (1920), intent alone will not effectuate a change of beneficiary.

■ We agree with the district court that the decedent's failure to change beneficiaries due to a mistaken impression, is insufficient to change a beneficiary. We do not think that a group insurance policy changes this result, nor do we believe that the insurance company can be faulted for failing, if it did, to notify Nunn that he could or should change his beneficiary after his divorce.

Bonnie also argues that the divorce and property settlement divested Carol of her interest in Jay's life insurance policy despite his failure to change or attempt to change beneficiary. Carol argues that the divorce *per se* did not affect her rights as beneficiary, and especially because the property distribution by the district court did not mention insurance, she is entitled to the proceeds. The district court agreed with Carol:

"There are cases which hold that a beneficiary's interest in an insurance policy can be effectively terminated in a divorce proceeding. The transcript of the divorce proceeding and the judgment entered therein are part of the record in this case. The subject of insurance was not covered at all. The Court divided items of personal property, giving some to the decedent, and then provided that Carol Wink Schaeffer would have the remainder of the personal property. This is not sufficient to divest the beneficiary of her interest in the property."

Bonnie agrees that there was no formal property settlement prior to the divorce hearing due to the animosity of the parties. She submits, however, that the district court intended to equitably distribute all of the property at the divorce hearing and even though the insurance policies were not specifically mentioned, they were included in the property disposition.

■ Absent an insurance policy provision to the contrary (rights of beneficiary are conditioned upon the continuance of the marriage), or the regulation of the matter by statute, the general rule is that the rights of a beneficiary are not affected by a divorce between the beneficiary and the

insured. 4 Couch on Insurance 2d, Section 27:111; *see also, Annot.*, 70 A.L.R.3d 348 (1976).

■ This rule is premised on the theory that the wife's right to recover is not dependent upon the existence of a marital relationship but upon principles of contract law. Although a divorce *per se* does not affect a beneficiary's right to insurance proceeds, a beneficiary may contract away her interest in the policy through a separation or property settlement agreement even if the beneficiary is not formally changed. Couch, *supra* Section 27:114.

■ It is generally accepted that a specific award of an insurance policy to the husband in a property settlement agreement or final divorce decree terminates the wife's interest in the proceeds, notwithstanding the husband's failure to change his designation of beneficiary. *Annot.*, 70 A.L.R.3d 348 (1976).

The result is less clear, however, if the insurance policy is not specifically mentioned. Some cases refuse to "rewrite" a property settlement agreement or final divorce decree to include insurance if it is not specifically mentioned. In *Mullenax v. National Reserve Life Ins. Co.*, 29 Colo.App. 418, 485 P.2d 137 (1971), a Colorado Court of Appeals interpreted a separation agreement that did not specifically mention insurance and found that general language was not sufficient to terminate the beneficiary's rights:

"The terms of the separation agreement required plaintiff [divorced wife] to convey all of her 'right, title and interest in and to any and all property' held by the husband. The clear meaning of this clause is that plaintiff was conveying unto the decedent any interest in the property to which she might have had a legitimate claim or interest. She had no present interest in this policy, only a mere expectancy. [citation omitted] Plaintiff might have renounced or disclaimed her expectancy in the policy by this or any other agreement, but this is sharply distinguishable from the wording of the agreement itself, which speaks of conveying any interest she might have in the decedent's property.

"The agreement does not contain a renunciation of her expectancy in the policy and, absent such a specific disclaimer, we will not construe the agreement so as to include a renunciation of her right to take as beneficiary under the policy. It is not the duty of the court to make new contracts for the parties, but merely to interpret the one as written." 485 P.2d at 139–40.

*See also Cox v. Employers Life Insurance of Wausau*, 25 Ill.App.3d 12, 322 N.E.2d 555 (1975); *McClain v. Beder*, 25 Ariz.App. 231, 542 P.2d 424 (1975); *Costello v. Costello*, 379 F.Supp. 630 (D.Wyo.1974); *O'Toole v. Central Laborers' Pension & Welf. Funds*, 12 Ill.App.3d 995, 299 N.E.2d 392 (1973).

Other cases attempt to ascertain the parties' intent and will construe a settlement agreement or divorce decree to effectuate such intent even though the insurance policy is not specifically mentioned.

In *Hollaway v. Selvidge*, 219 Kan. 345, 548 P.2d 835 (1976), the Supreme Court of Kansas interpreted a property settlement agreement to include certain insurance policies even though the policies were not specifically mentioned. The agreement, which was approved by the court and incorporated into the divorce decree, referred to "all property rights and claims." The Kansas court stated the general rule that divorce does not affect a beneficiary designation and then discussed its interpretation of the exception to the rule:

"However, it is well settled that as part of a separation or property settlement agreement a wife may, upon divorce, contract away her right to claim insurance proceeds from policies on her husband's life in which she is named as the beneficiary (4 Couch on Insurance 2d, § 27:114, p. 655). The primary rule of construction of a settlement agreement in connection with a divorce action is that, if possible, the court must, as in other contract cases, ascertain and give effect to the mutual intention of the parties at the time the

contract was made [citation omitted]. Thus the rights of a beneficiary to the proceeds of an insurance policy upon the life of a divorced spouse may be terminated by an agreement between the parties which may be reasonably construed as a relinquishment of the spouse's rights to the insurance." 219 Kan. at 348–49, 548 P.2d at 839.

The court also noted that the wife's interest in the policy was only an expectancy that could be divested by husband's change of beneficiary, but it still found that the agreement included the insurance:

"We recognize that each case of this kind must be decided on its own facts in determining the parties' intention. Here the settlement was sufficiently comprehensive in nature to demonstrate an intent to embrace and settle all the parties' affairs of whatever nature. They broadly agreed to settle all rights and claims between them and each relinquished all right, title and interest in the property of the other." 219 Kan. at 350, 548 P.2d at 840.

See also Mohawk Airlines, Inc. v. Peach, 61 A.D.2d 346, 402 N.Y.S.2d 496 (1978); Davis v. Davis, 301 So.2d 154 (Dist.Ct.App.Fla. 1974); Teachers Ins. & Annuity Ass'n of Amer. v. Rogers, 41 A.D.2d 1020, 343 N.Y. S.2d 956 (1973); O'Brien v. Elder, 250 F.2d 275 (5th Cir. 1957); Western and Southern Life Co. v. Hague, 140 N.E.2d 89 (C.P. Franklin County, Ohio Com. Pl.1956). Cf. Meer v. Garvey, 212 So.2d 97 (Dist.App.Fla. 1968), cert. denied 219 So.2d 703 (Fla.1969) [property settlement agreement and final decree of divorce approving such settlement found to include savings bonds even though not specifically mentioned].

■ We think that a case-by-case approach is preferred over a rigid rule that requires an insurance policy to be specifically mentioned in a property agreement or divorce decree before it can be distributed in a property settlement. See, e. g., Matter of Estate of McEndaffer, Colo., 560 P.2d 87 (1977) [Supreme Court of Colorado apparently limited the decision in Mullenax v. National Reserve Life Ins. Co., supra ];

Aetna Life Ins. Co. v. White, 242 So.2d 771 (Dist.Ct.App.Fla.1971). Many of the cases that find general language insufficient to divest a beneficiary of insurance proceeds are distinguishable on the facts from this case and could probably have been decided on narrower grounds, e. g. interpretation of the agreement in question without deciding that all property settlement agreements that do not specifically mention insurance are insufficient.

■ In this case, there was no property settlement prior to the divorce decree and the judgment and decree of divorce did not specifically mention the insurance proceeds. The decree also did not include a general clause that could be used to ascertain the parties' intent and determine if the insurance proceeds were to be included in the property disposition. Bonnie, however, argues that the divorce transcript indicates the intent of the district court and the parties was to distribute all of the property. Specifically, on direct examination of Carol, her attorney asked: "[Do] you wish to have a division of the property owned by you and Jay?", and Carol replied, "Yes." Also, the trial court stated, in its decision, that "It means you are both in substantially the same position as you were before you were married as far as this Court can see." We note, however, that this statement by the district court followed its distribution of the parties' real estate, and was not a concluding remark following the entire distribution of the property.

We can find no other references in the divorce transcript that may be construed to distribute all of the parties' property. We do not believe that any part of the transcript discloses an intent of the parties or the court to distribute any insurance proceeds.

No cases have been referred to us and none have been discovered in our research that allow insurance proceeds to be distributed in this situation other than to the designated beneficiary, i. e., without even a general clause that might indicate the parties' intent to dispose of the insurance.

In *Lynch v. Bogenrief*, Iowa, 237 N.W.2d 793 (Iowa 1976), the Supreme Court of Iowa dealt with a similar question. In *Lynch*, the ex-wife (named beneficiary) and widow-administrator of a deceased fireman both claimed his retirement system death benefits. Evidence introduced at trial indicated that the deceased had not seen his ex-wife for over 11 years, he did not like her, and he was going to quit paying alimony after he retired. Other evidence indicated that the deceased, after becoming terminally ill, thought his benefits would go to his second wife and minor children. The Supreme Court of Iowa finding no provision in the divorce decree relating to death benefits, was unwilling to read such a provision into the decree:

> "[W]e have examined the provisions of the divorce decree to determine if it controlled the rights of . . . [ex-wife] in the accumulated contributions. Specific provisions governed disposition of the real estate, household furniture and fixtures. The final sentence provided 'That each of the parties hereto shall have the title to and possession of their own personal belongings.'
>
> "There is no mention of retirement or death benefits or any language of relinquishment or waiver of statutory right, or rights as designated beneficiary, in any death benefits.
>
> ". . . Construing the above quoted language of the divorce decree to its greatest permissible reach, it only insured the remaining personal property interests of the respective parties would continue unchanged." 237 N.W.2d at 798.

The Iowa court expressed dissatisfaction with the result, but noted that any change in the law should be made by the Legislature:

> "We arrive at our holding with the dissatisfied realization the result reached probably frustrates the intentions Lynch failed to legally implement. The long-range policy issues inherent in these situations are best resolved by the legislature which could amend the statutory language or adopt a statute similar to the

Michigan legislation . . . ." [Specific statute provides unless the rights of the wife to the insurance proceeds are determined in the divorce decree, the policy "shall thereupon become and be payable to the estate of the husband or to such named beneficiary as he shall affirmatively designate."] *Id.* at 799.

In this light, with the hope that our Legislature will study this problem and resolve it by legislation, we conclude that the divorce decree did not divest Carol of the insurance proceeds.

■ There is a final issue that merits discussion, and that is whether or not the insurance policy conditioned Carol's rights as beneficiary upon the continuance of the marriage. Although Carol agrees that one must be a dependent to qualify for medical benefits, she argues that the insured can name anyone he desires as beneficiary of the life insurance. Carol submits that this interpretation is supported by the provisions in the insurance policy regarding the beneficiary. For example, the insurance policy provides:

> "Any part of the insurance for which there is no designated beneficiary living at the death of the employee will be payable in a single sum, to the first surviving class of the following classes of successive preference beneficiaries: The employee's (a) widow or widower; (b) surviving children; (c) surviving parents; (d) surviving brothers and sisters; and (e) executors or administrators."

Although Bonnie admits that the beneficiary does not have to be a dependent to qualify, she argues that the policy was misinterpreted by the deceased and led to his mistaken belief that he did not have to change beneficiaries.

As a result of our examination of the policy, we conclude that an insured is not restricted in his choice of beneficiary to a dependent.

In *Devane v. Travelers Insurance Company*, 8 N.C.App. 247, 174 S.E.2d 146 (1970), a North Carolina court dealt with a similar argument:

"Plaintiff contends that the absolute divorce operated so as to revoke the designation of Betty as beneficiary of the group life and accident policy. The contention proceeds along the following lines: (a) protection is provided for dependents of the employee, (b) 'dependent' as used in the policy is limited to 'the Employee's wife or husband, as the case may be,' (c) dependents cease to be covered '[w]hen such person ceases to be a Dependent of the Employee' and (d) Betty was no longer a dependent at the time of Bobby's death, therefore, she is not entitled to receive the proceeds of this insurance policy.

"An examination of the policy, however, discloses that the terms 'beneficiary' and 'dependent' are not interchangeable. The certificate included accidental death coverage for employees as well as surgical and major medical benefits for employees and their dependents. The term 'dependent' is material and pertinent only as it relates to those sections of the certificate setting out medical benefits; the policy discloses no intent that the term 'dependent' should operate as a limitation on the term 'beneficiary.'" 8 N.C.App. at 250, 174 S.E.2d at 148.

Although the policy may have contributed to the deceased's alleged mistaken intent, as noted earlier this is not grounds for relief. *See also Lynch v. Bogenrief, supra* at 795, in which the deceased thought that his benefits were payable to his second wife, and the court found for named beneficiary.[1]

Mindful of the warning of the Iowa Supreme Court in *Lynch v. Bogenrief, supra* at 794, that "hard facts may make bad law", we resist the temptation to bend the law to reach what we might believe to be a better result. Accordingly, we affirm the judgment of the district court.

PAULSON, PEDERSON and VandeWALLE, JJ., concur.

SAND, Justice (specially concurring).

I concur in the conclusions reached by Chief Justice Erickstad in the opinion and with many of the thoughts expressed therein. Were it not for Bonnie Nunn's agreement, as expressed in the majority opinion, that the beneficiary need not be a dependent to qualify I would not be completely satisfied that the terms of the life insurance policy control and should not have been construed in line with the purposes and objectives and definitions set out in the group plan. In the absence of such agreement the group plan definitions should be applied to the insurance policy and be construed whenever possible in line with the well established rule of construction that all provisions not clear and specific are construed most favorably in harmony with the objectives and purposes to be accomplished. In my opinion, this is particularly true when the program is designed for the welfare of the employee and his family and is financed primarily or wholly by the employer. To illustrate the point in mind: What value would there be to an employer who is concerned with the welfare of the employee and his family if a married employee with children named a non-dependent or a person outside of the family as beneficiary, and upon the employee's death the benefits would go to such named beneficiary, and the surviving wife and children would get nothing? The answer is, there would be no incentive for an employer to adopt and carry out such a program.

There is no language stating that the definitions in the group plan booklet do not apply to both the health care program and to the group life insurance program. The language of the policy is an item which is primarily between the employer and the insurance carrier and generally is an item which does not come under the scrutiny of the employee. It is a product of negotia-

---

1. The members of this court have disagreed as to the applicability of the "Doctrine of Reasonable Expectations" and obligations arising from "status" rather than contract [*See Mills v.* *Agrichemical Aviation, Inc.,* 250 N.W.2d 663 (N.D.1977)]. We agree, however, that these principles have no application to circumstances such as we have here.

tion between the insurance carrier and the employer. There is a responsibility upon the employer to secure the type of coverage for the employee which complies with the group plan.

I fully agree with the statement that hard facts make bad law and that we should and must resist the temptation to bend the law to reach a desired result. In my view, judicial restraint is necessary and furthermore it takes judicial courage to exercise such restraint. The basic issue involved here is one which can be readily resolved by appropriate legislation.