No. 54,097

RUTH L. HINDS, *Plaintiff-Appellee*, v. THE BOARD OF PUBLIC UTILI-
TIES OF KANSAS CITY, KANSAS and THE BOARD OF PENSION TRUST-
EES OF THE BOARD OF PUBLIC UTILITIES OF KANSAS CITY KANSAS,
*Defendants*, and TREVA J. HINDS, *Defendant-Appellant.*

(664 P.2d 806)

Opinion filed June 10, 1983.

*Scott I. Asner,* of Carson, Fields, Boal, Jeserich and Asner, of Kansas City, argued the cause and was on the briefs for appellant.

*Jan A. Way,* of Jenkins, Way, Turner & Vader, Chartered, of Kansas City, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

MILLER, J.: This case was heard and affirmed by a panel of the Court of Appeals composed of Judge Corwin C. Spencer, Judge Sherman A. Parks, and District Judge Harry G. Miller, retired. The opinion, written by Judge Miller, was unpublished. We granted review and now find that we agree with the resolution of the case by the Court of Appeals. Its opinion sets forth the factual background, the provisions of the pension plan which are involved, the contentions of the parties, the trial court's holding, and the Court of Appeals' determination of the issues. The opinion reads as follows:

"This is an appeal by the defendant Treva J. Hinds from an order of the district court determining that pension funds held by the Board of Public Utilities of Kansas City, Kansas, were payable to plaintiff Ruth L. Hinds. The defendants

Board of Public Utilities and the Board of Pension Trustees have filed notice of disclaimer of interest and are not participants in the appeal.

"The present action was commenced by the plaintiff, Ruth Hinds, the surviving spouse of Athel Hinds, who was formerly employed by the Board of Public Utilities, seeking a declaratory judgment to determine whether certain pension funds were payable to her as surviving spouse, or to the designated beneficiary, Treva J. Hinds, who is Athel's ex-wife.

"The case was tried to the court on stipulated facts. The essential facts to this appeal are herein summarized. Athel Hinds was married to Treva Hinds in 1940. Of this union two children were born. On January 3, 1955, he went to work for the Board of Public Utilities and became a participant in the Board's Employee Beneficiary Pension Program (Plan). At that time he designated Treva J. Hinds as his beneficiary under the Plan, and this designation was never cancelled or changed during his lifetime.

"In 1960, Athel divorced Treva, and in 1962 he married Ruth Hinds. On February 4, 1978, Athel died at the age of fifty-eight years. He was survived by his wife Ruth and two minor children, and also by two adult children of his first marriage.

"It was not the practice of the Board of Public Utilities to request from its employees periodic updates with regard to their designation of beneficiaries. However, the Plan was revised from time to time and the Board's policy was to make available to its employees at various times a booklet explaining the Plan. This was done in 1959, 1966 and 1970. The Plan, in general, provided for pension benefits to an employee, with options, upon attaining 'Normal Retirement' age (which was defined to mean age sixty-five) or upon 'Voluntary Early Retirement' after age fifty-five, or upon 'Disability Retirement.'

"The particular provisions of the Plan about which the controversy here centers are as follows:

"Article III (3):

" '(3) Surviving Spouse Benefit.

'If the death of a Member occurs after age 55 and after the revised date of the Plan, but prior to actual retirement, the surviving spouse of the Member shall receive a benefit as if the Member had retired the day prior to his death and had selected Option A under subsection (1) (c) of this Article III. In lieu of the Surviving Spouse Benefit provided in this section (3) of Article III, the surviving spouse may elect to receive a refund of the member's accumulated contributions at the date of his death.'

"Article III (9):

'(9) Beneficiary.

'A member shall have the right to name any person as his beneficiary and to change such designation at any time, by written notice filed with the Pension Board. If there is no surviving beneficiary at the death of a Member, the benefits, if any, shall be payable to his heirs in accordance with the laws of descent and distribution of the State of Kansas.'

The option given to the surviving spouse under section 3 was to receive a reduced pension for life or to receive a refund of the deceased employee's accumulated contributions.

"Plaintiff's claim to the pension funds is based on the provisions of section 3 of

Article III. Defendant, as the designated beneficiary, bases her claim to the funds on section 9.

"The defendant Treva Hinds urges that the question presented should be determined in accordance with the general principles used in life insurance cases. This is often done in some jurisdictions, but other jurisdictions differ. In 60 Am. Jur. 2d, Pensions and Retirement Funds § 51, the following comment appears:

'Public pension or retirement plans sometimes provide that the employee may designate a beneficiary to receive payment of benefits under the fund in the event of the death of the member or employee before retirement. Some courts take the position that designation of beneficiaries for pension purposes is governed by the same rules applicable to the designation of beneficiaries of policies of life insurance, and hold that a designation of a beneficiary or beneficiaries by the employee which is duly executed and properly on file will absolutely control the disposition of survival benefits. Courts in other jurisdictions, however, deny that the interpretation of the provisions of retirement acts for public employees is governed by the same principles as are applicable to ordinary life insurance policies, and hold that the cases dealing with ordinary life insurance contracts are not controlling in matters involving public employee pensions. In these jurisdictions the courts seek to discover and effectuate the employee's intent with respect to nominating a beneficiary of survival benefits. Thus, a change of designation of beneficiary of survival benefits has been held effective where the pensioner completed the required form but failed to file it before his death.' See also Annot., 5 A.L.R.3d 644.

"As yet this state has not adopted either one of the above approaches. In the context of insurance cases, however, the rule in this state is firmly established that the designated beneficiary is entitled to the proceeds of the policy. *Matthews v. Matthews,* 163 Kan. 755, 186 P.2d 233 (1947); *Filley v. Insurance Co.,* 91 Kan. 220, 137 Pac. 793 (1914).

"In *Tromp v. National Reserve Life,* 143 Kan. 98, 53 P.2d 831 (1936), in a case involving an insurance policy, the court dealt with a conflict between decedent's ex-wife, whom he had divorced, and his widow. The court stated at page 106:

" 'What motives prompted the insured to procure the policy, why after the divorce proceedings he did not designate either his second wife or his executors or administrators as beneficiary, or whether he felt the proceeds, in event of his death, should justly go to his first wife, are of no consequence. With full power to change his beneficiary, he let the policy stand as originally written. *All that we may assume is that he left the policy as he wanted it.* We are not warranted in making another and different disposition. Our conclusion is that the rights of the first wife as the designated beneficiary were not affected by the decree in the divorce action.' (Emphasis supplied.)

"More recently, however, in *Hollaway v. Selvidge,* 219 Kan. 345, 548 P.2d 835 (1976), the court indicated a willingness to consider other factors to determine who should be the decedent's beneficiary and arrived at a different conclusion by examining the decedent's divorce decree and his actions near the time of his death. The court noted that the decedent had applied to change his designated beneficiary in his life insurance policies and under his pension plan, but such change had not been effected prior to his death. The court found that the settlement agreement between the parties entered into at the time of the divorce

was sufficiently comprehensive to include the ex-wife's interest in the decedent's life insurance and pension plan.

"The cases cited above, however, do not deal with the problem of specifically conflicting provisions in a pension plan concerning surviving spouses and designated beneficiaries such as is presented here. The issue to be decided in the present case is whether the Plan, under the particular circumstances here, provides by its own terms for the payment of retirement benefits to the surviving spouse over the designated beneficiary.

"The position of the defendant Treva Hinds is that section 9 of Article III should control and that section 3 should be construed to provide pension benefits to the surviving spouse only if she is also the named beneficiary under the Plan at the time of her husband's death. Such a construction, she contends, would not only give the recipient spouse an option not available to other beneficiaries, but would give effect to section 9 of the article and would be more consistent with the overall design of the Plan.

"Plaintiff argues, however, that such an interpretation ignores the plain terms of section 3 which specifically provides that in such a situation as here 'the surviving spouse of the Member shall receive' the benefits, including the option provided for.

"There is nothing in the record in the nature of comment or discussion by the drafters of the Plan which might explain the reasons why the particular terminology in section 3 was used. There is in the record, however, a brochure dated January 1, 1970, which describes the Plan and how it is administered, and, in addition, gives a short history of the Plan and its development from the date of its inception.

"According to the brochure, the Plan was revised to include a number of changes to become effective as of January 1, 1970. Of significance here among the changes made is one, stated to be 'one of the major changes,' described as follows:

" 'Pensions for widows are provided in case of death of employees prior to normal retirement age, with the additional privilege that widows' pensions in all cases may be an alternate choice to receiving the employee's accumulated contributions.'

"This bit of history tends to support the plaintiff's contention that at the time the Plan was revised, section 3 was purposefully written into the Plan in order to provide for widows in the specific situation presented here, i.e., the widow of an employee who dies after age fifty-five but before retirement.

"The plain and ordinary meaning of the term 'widow' is that of a woman who has outlived the man to whom she was married at the time of his death. Webster's New World Dictionary, Second College Ed. 1625 (1974). Only in section 3 is the 'surviving spouse' the provided for recipient of pension benefits upon the death of an employee. Elsewhere throughout the Plan, survivor's benefits after retirement of an employee are designated to go to a recipient described in such terms as 'the beneficiary' or 'the dependent beneficiary designated at the time of his death,' and the options are different in certain respects.

"This court should not speculate on the reasons why section 3 was engrafted into the Plan at the time of the 1970 revision. Its terms are plain and unambigu-

ous, and we conclude that the trial court did not err in holding that under the facts presented, the pension benefits should go to the plaintiff."

We agree with the rationale of the Court of Appeals. Additionally, we call attention to the statutes under which the Plan was authorized and adopted. The Board of Public Utilities is a public administrative agency or arm of the City of Kansas City, Kansas. *Board of Public Utilities v. City of Kansas City*, 227 Kan. 194, 198, 605 P.2d 151 (1980). It is an elected board, created by statute, and has only those powers which are granted to it by law. Other powers are granted to the City.

K.S.A. 13-1246, last amended in 1953, grants the authority to establish retirement plans for employees of the BPU. The statute reads:

"13-1246. . . . The governing body of any municipality of the state of Kansas having a population of more than one hundred twenty thousand (120,000) and owning and operating a public utility or utilities is hereby empowered and may at its option enter into an agreement with its employees in said municipally owned public utility or utilities providing for the establishment of a retirement pension plan *for the benefit of said employees, their wives and dependents: Provided,* That in any municipality of over one hundred twenty thousand (120,000) population where the public utility or utilities are operated, managed, and controlled by a board of public utilities or any other managing board, however designated, such managing board instead of the governing body of the municipality shall be empowered to enter into the agreement and establish the retirement pension plan provided for herein." (Emphasis supplied.)

It is the expressed purpose of the statute to authorize retirement pension plans for the benefit of the *employees, their wives and dependents.* However, the following section of the statute K.S.A. 13-1246a provides in part:

"That the members and employees of any retirement pension plan continued, revised and adopted under the provisions of this act, may name one or more beneficiaries to receive any benefits that may be due or become due to said member and employee in the event of his or her death."

Both sections of the statutes must be read into the plan.

Article III (3) provides that if the death of a Member occurs after age fifty-five but prior to actual retirement, the surviving spouse of the Member shall receive the benefit. Both contingencies—death after age fifty-five and prior to retirement—occurred here. We read Article III (3) as an exception to the normal situation: death after retirement. To give effect to Article III (3), it necessarily follows that the designation of a beneficiary under Article III (9) must be overridden in favor of the surviving

spouse when death occurs after age fifty-five but prior to retirement. This holding gives effect to the expressed statutory purpose, and also to the specific amendment made to the plan by the 1970 revision.

We conclude that the trial court and the Court of Appeals were correct in concluding that the pension benefits payable upon the death of Athel Hinds should be paid to his widow, Ruth L. Hinds.

The judgment of the Court of Appeals affirming the trial court, and the judgment of the trial court, are affirmed.

HERD, J., dissenting: I am compelled to dissent from the majority opinion. A worker owns his retirement fund. Indeed, we acknowledge that ownership by providing that it vests after a certain period of service. Ownership of property carries with it the right to designate who shall enjoy the benefits after the owner dies. This is a distinction peculiar to a free society and is one of the basic building blocks of freedom.

Here the owner of the pension had designated his beneficiary. We must assume he intended the logical consequence of that designation. By rejecting this assumption the majority has taken a step it will regret. Picture a situation where the pension owner remarries late in life and designates his children as beneficiaries, or perhaps his invalid mother. Under the majority opinion his wishes would not be honored and his wife of a few months would receive the benefits.

In the case at bar the majority clearly has substituted its judgment for that of the decedent. Based on its own concept of equity, it has decided who should receive the benefits of the plan. In my opinion we are not so all-knowing that we can peer into the mind of one since departed and determine that person intended something he never evinced while living. In a free society people must be left alone to err or triumph as the case may be. I would honor the decedent's designation of beneficiary and reverse.

SCHROEDER, C.J., and McFARLAND, J., join the foregoing dissent.