## TRAVELERS INSURANCE COMPANY, Plaintiff,

v.

### Ruth DANIELS and Hattie Hunter, Defendants-Appellees,

and

### Kaye E. Daniels and Kendall Lynniece Daniels, Defendants-Appellants.

No. 80–1227.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 31, 1980.

Decided Jan. 9, 1981.

Donald A. Shapiro, Chicago, Ill., for plaintiff.

Odas Nicholson, Chicago, Ill., for defendants-appellees.

Before FAIRCHILD, Chief Judge, and SPRECHER and CUDAHY, Circuit Judges.

SPRECHER, Circuit Judge.

This is a statutory interpleader action brought by Travelers Insurance Company pursuant to 28 U.S.C. § 1335, to determine

the appropriate beneficiaries of the proceeds of the life insurance policy of Fred Daniels. Ruth Daniels and Hattie Hunter are the named beneficiaries of the policy. Kaye and Kendall Daniels claim that Kendall is entitled to the policy proceeds because Kaye and Fred Daniels' divorce decree ordered Fred Daniels to maintain a life insurance policy on his life, with his daughter Kendall as irrevocable beneficiary during her minority.

The district court denied Kaye and Kendall Daniels' motion for summary judgment and *sua sponte* entered summary judgment in favor of Ruth Daniels and Hattie Hunter. For the reasons stated below, we reverse.

## I

The facts here are not in dispute. Fred D. Daniels was employed by the Chicago Transit Authority ("CTA") from 1967 until he died in 1979. As a CTA employee, he was eligible for and secured group life insurance with Travelers Insurance Company. He initially named his mother, Hattie Hunter, as sole beneficiary.

Fred Daniels and Kaye Daniels were married in 1968. In 1971, Kendall Lynniece Daniels was born. On April 9, 1976, Fred and Kaye were divorced. Fred Daniels was personally served, but did not appear at the divorce hearing. The divorce decree ordered Fred to "maintain in full force and effect, all existing life insurance policies which he has on his life, and designate KENDALL LYNNIECE DANIELS, minor child of the parties, as irrevocable beneficiary during her minority." *Daniels v. Daniels*, No. 76 D 1162 (Cir.Ct. Cook Co. April 9, 1976) (Judgment for Divorce ¶ (d)). Although the Travelers Insurance policy was in effect at the time of the divorce, Fred Daniels never designated Kendall as beneficiary.

On October 20, 1976, Fred Daniels married Ruth Daniels. On January 9, 1977, he changed the beneficiary of his insurance policy by designating Ruth Daniels as sixty percent beneficiary and Hattie Hunter as forty percent beneficiary.

Ruth Daniels and Hattie Hunter were still the designated beneficiaries when Fred Daniels died in 1979. Because of the conflicting claims to the proceeds of Fred Daniels' policy, Travelers Insurance Company filed this interpleader action. The district court entered summary judgment for Ruth Daniels and Hattie Hunter, the named beneficiaries.

## II

In deciding who is entitled to the proceeds of the policy, this court must apply Illinois law. *See Continental Assur. Co. v. Platke*, 295 F.2d 571, 573 (7th Cir. 1961); *Prudential Ins. Co. v. Moore*, 145 F.2d 580, 583 (7th Cir. 1944), *cert. denied*, 324 U.S. 849, 65 S.Ct. 686, 89 L.Ed. 1409 (1945). In Illinois, as a general rule, the named beneficiary of a life insurance policy obtains a vested right to the proceeds upon the death of the insured. *Bank of Lyons v. Schultz*, 22 Ill.App.3d 410, 318 N.E.2d 52, 57 (1974). On this basis, the district court here ruled in favor of the named beneficiaries.

But Illinois courts have created exceptions to this "named beneficiary" rule where someone other than the named beneficiary has acquired an equitable right to be treated as the beneficiary. In two cases with facts similar to those of this case, Illinois courts have found that when a divorce decree orders a party to name his children as beneficiaries of his life insurance policy, those children are entitled to receive the proceeds, even if they were not the named beneficiaries at the time of that party's death. *Lincoln National Life Ins. Co. v. Watson*, 71 Ill.App.3d 900, 28 Ill.Dec. 339, 390 N.E.2d 506 (1979); *Brunnenmeyer v. Mass. Mutual Life Ins. Co.*, 66 Ill.App.3d 315, 23 Ill.Dec. 652, 384 N.E.2d 446 (1978).[1] *See also Appelman v. Appelman*, 87 Ill. App.3d 749, 43 Ill.Dec. 199, 410 N.E.2d 199

---

1. For a discussion of *Brunnenmeyer, Lincoln*, and similar cases in other jurisdictions, *see* Shapiro and Kalcheim, *Retrieving Insurance Proceeds Paid in Defiance of Divorce Settlements and Decrees*, 61 Chi.Bar Rec. 199 (1980).

(1980) (recognizing decedent's divorced wife's cause of action for imposition of a constructive trust on life insurance proceeds paid to decedent's widow in contravention of settlement agreement which was incorporated into judgment for divorce).

In *Brunnenmeyer*, the divorce decree ordered the father to maintain his minor children as beneficiaries of his life insurance policy. This provision was part of a property settlement agreement that was incorporated into the divorce decree. The father complied with the decree until one month before his death, when he changed the beneficiaries, naming his second wife and a bank (as trustee of a trust for the benefit of the minor children). The Illinois Appellate Court held that "the minor children of Brunnenmeyer have an equitable interest in all of the proceeds of the life insurance policy which is superior to that of [the second wife and trustee bank]." 23 Ill.Dec. at 654–55, 384 N.E.2d at 448–49.

 In this case, the district court distinguished *Brunnenmeyer* on several grounds. First, in *Brunnenmeyer*, the father complied with the decree until one month before his death. At the time of the Daniels' divorce, Kendall was not the beneficiary of Fred Daniels' life insurance policy, nor did Fred ever comply with the insurance provision in the divorce decree. Second, the insurance provision in *Brunnenmeyer* was part of a property settlement agreement that was incorporated into the divorce decree. Here, there was no written agreement concerning the insurance provision in the divorce decree.

The first *Brunnenmeyer* distinction, that Fred Daniels never named Kendall as beneficiary before or after the divorce, is not significant in light of the more recent *Lincoln* case.[2] *Lincoln*, like this case, was an interpleader action, where the rival claimants to the proceeds of a life insurance policy were the deceased's second wife and his son from his first marriage.[3] The first wife had been the original beneficiary of the policy. The 1963 divorce judgment ordered the father to designate his minor child as the beneficiary of the life insurance policy. He remarried one year after the divorce and died in 1976, never having changed the beneficiary designation.[4] Nevertheless, the court held:

> The resolution of the rights of the parties necessarily rests upon the ancient maxim of the courts of chancery that "equity regards as done that which ought to be done." (See *In re Estate of Krotzsch* (1975), 60 Ill.2d 342, 346, 326 N.E.2d 758 quoting from *Shay v. Penrose* (1962), 25 Ill.2d 447, 449, 185 N.E.2d 218.) In the case before us the property settlement agreement and the judgment for dissolution of the marriage required the deceased to make a change in the stated beneficiary of the insurance policy to provide that the beneficiary should be Craig Martin, the son of the deceased. The record does not indicate if the deceased made any attempt to comply with the requirements of these documents or if the divorced first wife, Cora Watson, ever attempted to compel this action. However, we will follow the maxim as stated and we will determine the rights of these parties commencing with the assumption that Craig Martin, son of the deceased, had been made beneficiary of the policy.

28 Ill.Dec. at 341, 390 N.E.2d at 508. Accordingly, we find that the facts that Fred Daniels never named Kendall as beneficiary of the insurance policy, and that Kaye Dan-

---

**2.** The *Lincoln* case is not cited in the district court opinion or in either party's submissions to that court, possibly because *Lincoln* was decided only eight months before the district court's decision in this case.

**3.** The first wife was also a claimant, but assigned her rights to her son. The court found that she had no right to the fund, so the assignment had no effect on the result reached. 28 Ill.Dec. at 342, 390 N.E.2d at 509.

**4.** The second wife was never named as beneficiary, but argued that the first wife had waived all interest in the insurance proceeds by virtue of her property settlement with the deceased. She argued that the son was not entitled to the proceeds because his father never named him as beneficiary, and since the son was an adult, the surviving widow became entitled to the proceeds. 28 Ill.Dec. at 341, 390 N.E.2d at 508.

iels did not compel Fred's compliance before his death, do not affect Kendall's right to the proceeds.

The second distinction from *Brunnenmeyer* made by the district court was that the property settlement agreement between the parties, and not the divorce decree itself, was a controlling factor in the *Brunnenmeyer* decision. Ruth Daniels and Hattie Hunter argue that a property settlement agreement was also the decisive factor in *Lincoln*. In the case before us there was no signed property settlement agreement.

In *Brunnenmeyer* the court framed the issue in terms of *both* the agreement and the decree. It defined the issue as whether "the trial court erred in awarding the proceeds of life insurance policies to named beneficiaries changed in violation of the terms of a *property settlement agreement which was incorporated into a divorce decree*." 23 Ill.Dec. at 654, 384 N.E.2d at 448 (emphasis added). That court also stated that "a beneficiary may, however, acquire a vested interest in the proceeds of the life insurance policy if he gives valuable consideration in return for the promise of the insured that the insured will name him beneficiary," *id.*, and concluded that "the property settlement agreement gave the children an equitable right which could be enforced." *Id.* But the children in *Brunnenmeyer* did not really give "valuable consideration" to their father. Rather, his promise to name his children as beneficiaries was a discharge of a portion of his child support obligation. An agreement between the par-

ents is not necessary to trigger this obligation or to enable a court to fashion a divorce decree that ensures child support. Ill. Rev.Stat. ch. 40, § 19.[5] *Gray v. Gray*, 57 Ill.App.3d 430, 15 Ill.Dec. 47, 52, 373 N.E.2d 317, 322 (1978) (for the benefit of the children, and in the absence of a property settlement agreement, the divorce court had the power, under Ill.Rev.Stat.1975, ch. 40, § 19, to award possession of the family home to the wife until the youngest child reached age sixteen). Thus, even in the absence of an agreement, the divorce court could have required the father to name his children as beneficiaries.

Contrary to Ruth Daniels' and Hattie Hunter's argument, the *Lincoln* case also supports the view that a property settlement agreement is not necessary to enforce a divorce decree's requirement that a parent name his child as beneficiary of his life insurance policy. While there was a property settlement agreement in *Lincoln*, the court did not rely on the agreement itself, but rather the fact that the "*judgment* contained a provision substantially the same as the property settlement agreement concerning the insurance." 28 Ill.Dec. at 341, 390 N.E.2d at 508 (emphasis added). The court went on to describe what the terms of the *judgment* required of the father. *Id.* There is no implication in *Lincoln* that a judgment is less powerful than an agreement in bestowing an equitable interest on the child ordered to be named as beneficiary. *See Ward v. Sampson*, 395 Ill. 353, 70 N.E.2d 324, 331 (1946) (divorce decree's requirement that husband convey real es-

---

**5.** Section 18 of the Illinois Divorce Act, Ill.Rev. Stat. ch. 40, § 19, which was in effect when the divorce decree was entered in 1976, provided:

When a divorce is decreed, the court may make such order touching the alimony and maintenance of the wife or husband, the care, custody and support of the children, or any of them as, from the circumstances of the parties and the nature of the case, shall be fit, reasonable and just and, in all cases, *including default cases*, the court shall make inquiry with respect to the children of the parties, if any, and shall make such order touching the care, custody, support and education of the minor children of the parties or any of them, as shall be deemed proper and for the benefit of the children.

In any order entered pursuant to this Section, the court may order the defendant to give reasonable security for such alimony and maintenance or such money or property settlement, . . . .

(Emphasis added). The Illinois Divorce Act (Ill.Rev.Stat.1975, ch. 40) was replaced by the Illinois Marriage and Dissolution of Marriage. Act (Ill.Rev.Stat.1977, ch. 40) in October, 1977.

Requiring a parent to name his child as beneficiary of his life insurance policy is a common provision in divorce decrees entered under the Illinois Divorce Act. *See, e.g., Lewis v. Lewis*, 120 Ill.App.2d 263, 256 N.E.2d 660, 666 (1970).

tate to wife was enforced after wife's death, pursuant to the maxim that "equity considers that as done that which ought to be done").

As discussed above, it was not necessary for Fred Daniels to have *agreed* to child support to make him subject to enforcement of the child support provisions in the decree. The divorce judgment set out the terms of his child support obligation, and he never petitioned the divorce court for modification of the insurance provision in the decree.[6] The record indicates that Fred Daniels was not diligent in paying child support while he was alive, and that Kaye Daniels was forced to turn to the courts to enforce the decree on behalf of Kendall.[7] In light of *Lincoln* and *Brunnenmeyer,* we believe that an Illinois court would follow the maxim that "equity regards as done that which ought to be done" and would enforce the terms of the divorce judgment here, even in the absence of a property settlement agreement.[8] To do otherwise would be to allow parties to flaunt child support responsibilities by not entering agreements.

We realize that neither Ruth Daniels nor Hattie Hunter are responsible for Fred Daniels' dereliction of his duty. But neither are they entitled to reap the benefits of the policy when Kendall should have been named as the irrevocable beneficiary since the 1976 divorce decree. *Brunnenmeyer* and *Lincoln* teach us that Illinois law does not allow circumvention of child support terms ordered in a divorce decree. When those terms relate to life insurance, so that the named beneficiaries, rather than the recalcitrant parent, are parties to the enforcement action, the rights of the parties are determined by assuming that that which ought to have been done was done. Thus, the child is made beneficiary of the policy.

## III

A final issue arises from the fact that this divorce was by default. Ruth Daniels and Hattie Hunter argue that Fred Daniels was not even aware that the decree required him to name Kendall as beneficiary to his life insurance policy.[9] The possibility that

---

**6.** Section 18 of the Illinois Divorce Act, Ill.Rev. Stat. ch. 40, § 19, provides:

The court may, on application, from time to time, terminate or make such alterations in the allowance of alimony and maintenance, and the care, education, custody and support of the children, as shall appear reasonable and proper.

**7.** According to the district court, "[n]umerous appearances were made in connection with Fred Daniels' arrearages in child support." *Travelers Insurance Co. v. Daniels,* No. 79 C 3704, slip op. at 2 (N.D.Ill. January 23, 1980).

**8.** We believe that not limiting the application of the rule to property settlements is a better statement of the general rule. Despite the fact that most of the cases involved a property settlement agreement which merged into a divorce decree, the results consistently have been to award the policy proceeds to the child. *See* cases cited in Shapiro and Kalcheim at 199 (1980).

The general rule is stated in *Couch on Insurance 2d,* § 63:370 at 91 (1967);

Where the insured is obligated by judicial decree to change the beneficiary under his policy, the law will regard him as having done that which he is obligated to do and will treat the policies as equitably assigned to the

persons who should have been named as beneficiaries.
(footnote omitted).

**9.** Ruth Daniels and Hattie Hunter also argue that, although the insurance provision appears in the divorce judgment, it is never mentioned in the transcript of the hearing. First, we note that since Fred Daniels failed to appear at the hearing, he could not have relied on what was discussed or not discussed at the hearing. Second, we take judicial notice of the following order of the Cook County Circuit Court, entered April 9, 1976, the day of the divorce judgment:

On Motion of James O'Bryant, Jr., attorney for plaintiff herein, for inclusion of the question: "You are asking that the minor child be named irrevocable beneficiary of any and all life insurance now carried on the life of the defendant, until said minor reaches her majority?" and the response; "yes." be included in and made a part of the Report of Proceedings herein:

IT IS ORDERED that said response and answer be, and it is hereby made a part of the Report of Proceedings herein.
*Daniels v. Daniels,* No. 76 D 1162 (Cir.Ct. Cook Co. April 9, 1976).

Fred Daniels did not bother to ascertain the specific terms of the divorce decree does not change our holding. He was personally served with notice of the divorce proceedings.[10] He obviously was aware of the divorce, since he remarried. He also was aware of the child support provisions in the decree, since numerous appearances were made in connection with his arrearages in child support.

It would be unconscionable to hold that a parent may evade his child support obligations, as set out in a valid divorce decree, by not only failing to appear at the divorce hearing, but then by ignoring the terms of the decree. Section 18 of the Illinois Divorce Act, Ill.Rev.Stat. ch. 40, § 19, specifically authorizes child support orders in default cases.[11] Ordering a parent to name a minor child as beneficiary to a life insurance policy is an accepted method of providing security for child support. The policy behind such a provision in a divorce decree is especially appropriate here, where Kendall was deprived of her father's support at such a young age.

Accordingly, the order of the district court is REVERSED. The district court is ordered to enter judgment in favor of Kendall Lynniece Daniels.

---

**10.** The Judgment for Divorce states:

This matter having come on for hearing as a default, *the defendant having been personally served and having failed to appear or answer,* the plaintiff having appeared in open court in person and by attorney, the court having heard the evidence adduced, a Certificate of which is filed herein, and now being duly informed, FINDS: . . . .

*Daniels v. Daniels,* No. 76 D 1162 (Cir.Ct. Cook Co. April 9, 1976) (emphasis added).

**11.** *See* note 5, *supra.*