No. 77,443

WILLIAM B. WEAR, *Appellant*, v. JAMES C. MIZELL and ARILLA A. MIZELL, *Appellees*.

(946 P.2d 1363)

Opinion filed October 31, 1997.

*John T. Bird*, of Glassman, Bird & Braun, L.L.P., of Hays, argued the cause and was on the brief for appellant.

*Thomas C. Boone*, of Law Office of Thomas C. Boone, of Hays, argued the cause, and *Joseph W. Jeter*, of Jeter Law Firm, of Hays, was with him on the brief for appellees.

The opinion of the court was delivered by

SIX, J.: The proceeds of two life insurance policies are at issue here. A wife changed the beneficiary from her husband to her parents after filing for divorce. The wife died of injuries received in a vehicle accident while the divorce action was pending. No restraining order had been filed in the divorce action. After a bench trial on the validity of the beneficiary change, the district court ruled for the parents. The plaintiff husband, William B. Wear, appeals.

Our jurisdiction is under K.S.A. 20-3018(c) (transfer on this court's motion).

We affirm the district court. Death ended the divorce action. The wife as the designated owner of the policy exercised her contractual right to change the beneficiary. Equity as a matter of law did not apply.

## FACTS

A summary of the district court's findings of fact sets the stage for presentation of the issues.

William and Arilla Wear were the parents of two daughters. William is retired from the Army. In January 1993, William and Arilla moved back to Hays, Kansas, where both were employed at various jobs. They decided to purchase a $75,000 life insurance policy on Arilla's life. William was the named beneficiary. Arilla was designated as the owner in the application. Arilla applied in 1993, through her employer, for a $25,000 life insurance policy. William was also the initial beneficiary of this policy.

On February 7, 1994, Arilla filed a petition for divorce. Approximately 10 days after filing, Arilla changed the beneficiaries on both life insurance policies from William to the defendants, James C. Mizell and Arilla (Dolly) A. Mizell, her parents. During the pendency of the divorce, the parties maintained separate homes. William paid child support. The premiums on the $75,000 policy were paid by automatic withdrawals from a joint tenancy checking account.

William and Arilla had discussed reconciling. They planned a camping trip with their children for April 29, 1994, which was Arilla's birthday. The day before, while driving to pick up camping equipment, Arilla was fatally injured in a one-vehicle accident.

William learned that the beneficiary on both policies had been changed to the Mizells. The $75,000 policy contained a double indemnity clause for accidents. Ultimately, the proceeds of both policies, $177,694.56, were paid to the Mizells. At the time of Arilla's death, she and William had substantial credit card indebtedness and also various bills, including a debt to William's mother of approximately $9,450.

The parties to this action discussed how the insurance proceeds should be used for the benefit of the two minor children. They also discussed whether the Mizells should pay some of William's indebtedness. The Mizells decided to make a gift to William of $20,000. Eventually, they made payments of approximately $20,000 directly to William's creditors.

The Mizells told William the insurance proceeds were theirs and that they intended to use the funds as they saw fit for the benefit of their two granddaughters. This lawsuit followed.

## DISCUSSION

The district judge, although acknowledging K.S.A. 23-201(b), concluded that

"once the death of Arilla occurred, this matter went from a question to be determined under domestic relations law, to one of intestate succession and contract. No restrictions were entered on either party during the pendency of the divorce action which would prevent them from changing beneficiaries on their insurance policies."

The Mizells were the beneficiaries and were entitled to the proceeds. The district judge did not view the matter as a case in equity. The Mizells argued that an accord and satisfaction existed, because William had accepted approximately $20,000 after his demand for the insurance proceeds. The district judge decided that the Mizells had intended the payment as a gift.

The Mizells did not cross-appeal on the accord and satisfaction issue. Thus, our only question is: Was the district court correct in ruling, as a matter of law, that equity did not apply? The answer is, "Yes."

William argues that the district court erred in refusing to exercise its equitable powers. The resolution of this appeal involves a review of the district court's conclusions of law. Our review of conclusions of law is unlimited. *Gillespie v. Seymour*, 250 Kan. 123, 129, 823 P.2d 782 (1991).

### Beneficiary Interest

We described the interest of a beneficiary in a life insurance policy in *Hollaway v. Selvidge*, 219 Kan. 345, 349, 548 P.2d 835

(1976) (quoting 4 Couch on Insurance 2d § 27:58, pp. 561-64), as follows:

" 'Where a right to change the beneficiary is reserved in the policy, the beneficiary has no vested or indefeasible interest during the lifetime of the insured, but only a revocable expectancy contingent upon being the beneficiary at the time of the insured's death. A beneficiary has only an inchoate right to the proceeds of a policy, subject to being divested at any time during the lifetime of the insured, by transfer, assignment, or change of beneficiary. . . . .' "

*Hollaway* is factually distinguishable from this case. In *Hollaway*, we considered an attempted beneficiary change made after a property settlement agreement and divorce decree were entered. Leo (the insured) had accumulated KPERS benefits and obtained a life insurance and disability/accident policy while married to Rosalyn, who was designated as the beneficiary. As part of their divorce, Leo and Rosalyn reached a settlement agreement dividing their assets and relinquishing all claims against each other. Several months later, Leo married Judy. Within a few weeks Leo was killed. He had attempted to change the beneficiary from Rosalyn to Judy for both his KPERS benefits and the life insurance policy. His employer did not have the right forms on hand to accomplish the change. Despite the lack of beneficiary change, we affirmed the district court's determination that Judy, the second wife, as administrator of Leo's estate, was entitled to the KPERS benefits and the insurance proceeds. "We think a fair reading of [the settlement agreement] amounts to a relinquishment of [Rosalyn's] inchoate rights or expectancies both to the insurance proceeds and the KPERS benefits and the decedent's estate is therefore entitled to them." 219 Kan. at 350-51. Also, the district court concluded that Leo had done everything that he could to accomplish the beneficiary change.

William asserts that he and Arilla had a "tacit understanding that they would maintain life insurance on their own lives to protect the other." However, a tacit understanding does not amount to a contract. William, as the initial beneficiary on Arilla's life insurance policies, had no vested interest in the policies. His interest, if any, must arise under our domestic relations law.

## Applicable Domestic Relations Statutes

A review of the pertinent domestic relations statutes is appropriate. K.S.A. 23-201 provides:

"(a) The property, real and personal, which any person in this state may own at the time of the person's marriage, and the rents, issues, profits or proceeds thereof, and any real, personal or mixed property which shall come to a person by descent, devise or bequest, and the rents, issues, profits or proceeds thereof, or by gift from any person except the person's spouse, shall remain the person's sole and separate property, notwithstanding the marriage, and not be subject to the disposal of the person's spouse or liable for the spouse's debts.

"(b) All property owned by married persons, including the present value of any vested or unvested military retirement pay, whether described in subsection (a) or acquired by either spouse after marriage, and whether held individually or by the spouses in some form of co-ownership, such as joint tenancy or tenancy in common, shall become marital property at the time of commencement by one spouse against the other of an action in which a final decree is entered for divorce, separate maintenance, or annulment. Each spouse has a common ownership in marital property which vests at the time of commencement of such action, the extent of the vested interest to be determined and finalized by the court, pursuant to K.S.A. 60-1610 and amendments thereto."

Arrilla's filing of the divorce petition activated K.S.A. 23-201(b). We said in *Cady v. Cady*, 224 Kan. 339, 344, 581 P.2d 358 (1978):

"[T]he filing of a petition for divorce or separate maintenance creates a species of common or co-ownership in one spouse in the jointly acquired property held by the other, the extent of which is determined by the trial court pursuant to K.S.A. 1972 Supp. 60-1610(b). Except for those rights which vest by virtue of the filing of the divorce action, we in no way change the interest of one spouse in the property held by the other, or in the ability of the other spouse to convey, sell or give away such property."

Both of the life insurance policies were obtained during the marriage of William and Arilla. Income earned during the marriage was used to pay the premiums. Under the facts here, these policies and the right to receive the insurance proceeds upon the death of the insured are marital property within the meaning of K.S.A. 23-201(b).

In order to preserve the status quo between the divorcing parties as to marital property, K.S.A. 60-1607(a) authorizes the court to enter certain interlocutory orders including to

"(1) [j]ointly restrain the parties with regard to disposition of the property of the parties and provide for the use, occupancy, management and control of that property."

At the February 14, 1994, hearing following the filing of Arilla's divorce petition, she sought orders for temporary custody of the children and temporary child support. William appeared pro se. He did not contest the award of temporary custody and support to Arilla. Arilla's attorney represented that he would prepare the journal entry. However, none was ever prepared or filed. No other temporary orders in the divorce action were requested by William or Arilla before her death. No restraining order as to disposition of marital property was either requested or entered.

In finalizing a divorce, the district court is authorized under K.S.A. 60-1610(b) to make an equitable division of the marital property in the decree. No divorce decree was entered. William and Arilla did not reach a property settlement.

A divorce action is purely personal and ends on the death of either spouse. See generally *In re Marriage of Wilson*, 245 Kan. 178, 777 P.2d 773 (1989). In *Wilson*, at the divorce hearing, the parties agreed on a property settlement, child custody and support, and maintenance, and the wife's attorney was directed to prepare the decree. However, 9 hours before the divorce decree and judgment were journalized and filed, the husband died. The wife then requested to be relieved from the decree. The district court, which was affirmed on appeal, held that the journal entry was void because the parties were still married at the time of the husband's death. If there is no divorce, there is no division of property. 245 Kan. at 181.

Arilla died before any divorce decree or other order concerning the marital property was entered in the divorce action. A divorce action abates at the time of death.

### Change of Beneficiary in a Pending Divorce Action

William argues that the district court's error was in holding as a matter of law that it had no equitable power to consider who was entitled to the proceeds once Arilla had died, when the beneficiary change was attempted in a pending divorce. William relies pri-

marily on *Willoughby v. Willoughby*, 758 F. Supp. 646 (D. Kan. 1990), and *Pierce v. Pierce*, 12 Kan. App. 2d 810, 758 P.2d 252 (1988), *aff'd* 244 Kan. 246, 767 P.2d 292 (1989). Both cases are distinguishable. In *Willoughby*, at the time Edna, the wife, filed for divorce, her husband, Martin, was the insured under a life insurance policy. Edna was the beneficiary. She obtained a standard form restraining order at the time the petition was filed. The order prohibited the parties from withdrawing, selling, encumbering, or disposing of their money, property, or assets not needed for day-to-day living expenses. After Martin had been served a copy of the restraining order, he changed the beneficiary to his son, Terry, with his father, Felton, as secondary beneficiary. Terry was killed a few days later. Martin committed suicide. Edna sued Felton and the insurance company in federal district court, claiming that she was the rightful beneficiary and relying on the restraining order. Felton argued that the restraining order did not restrain Martin from changing beneficiaries on the insurance policy, because a beneficiary's right to receive benefits is a mere expectancy, not property subject to the order. Although the restraining order did not specifically mention the insurance policy, the court held that the policy was property within the terms of the restraining order and that Martin was restrained from changing beneficiaries. 758 F. Supp. at 649.

*Willoughby* has been cited in two cases involving similar fact situations: *Pope v. Cauffman*, 885 F. Supp. 1451 (D. Kan. 1995), and *Graham v. Graham*, 195 W.Va. 343, 465 S.E.2d 614 (1995). For examples of restraining orders containing express provisions concerning life insurance policies (unlike the general terms of the restraining order in *Willoughby*), see *Travelers Ins. Co. v. Daniels*, 667 F.2d 572 (7th Cir. 1981); *Candler v. Donaldson*, 272 F.2d 374 (6th Cir. 1959); *Standard Insurance v. Schwalbe*, 110 Wash. 2d 520, 755 P.2d 802 (1988). The better practice is to specifically reference a prohibition against a beneficiary change in a marital property restraining order.

The Mizells distinguish *Willoughby* on the basis that in *Willoughby* a temporary restraining order was entered before the beneficiary change. William argues here that the result in *Willoughby*

would have been the same, even without a restraining order. However, that proposition seems doubtful. The heart of the *Willoughby* decision is the finding that the beneficiary change violated the restraining order. All of the cases from other jurisdictions relied upon in *Willoughby* involved beneficiary changes that violated restraining orders or decrees.

There are no reported Kansas cases with *Willoughby*-type facts, *i.e.*, a standard form restraining order followed by a beneficiary change. However, this factual situation has arisen in other jurisdictions, with varying results. See Annot., *Divorce and Separation: Effect of Court Order Prohibiting Sale or Transfer of Property on Party's Right to Change Beneficiary of Insurance Policy*, 68 A.L.R.4th 929, § 3. See also 4 Couch on Insurance 3d § 64:20 (1996):

"A temporary restraining order or injunction obtained in order to prevent an insured spouse from transferring property during pendency of divorce proceedings may also preclude the insured from changing beneficiary during pendency of suit, notwithstanding that no precise reference was made to life insurance policies. Any such temporary order is effective only as to actions taken after the order is made, and cannot invalidate the insured's prior change of beneficiary in accordance with the rights and procedures under the policy terms."

Counsel has not cited, nor have we found, any cases from other jurisdictions in which a beneficiary designation made during a pending divorce action was held void without there having been a restraining order in effect. The cases which have voided beneficiary changes in pending divorce actions appear to rely, at least in part, on the fact that the attempted change violated an existing order prohibiting such a change. When the change of beneficiary is made before a temporary restraining order in a divorce action went into effect, the change has been upheld. See *Edinburg v. Massachusetts Mut. Life Ins. Co.*, 22 Mass. App. 923, 925, 492 N.E.2d 1182 (1986) ("When [husband] executed the change of beneficiary form, he acted pursuant to the terms of the policies. He was not violating any court order when he did so because no order prohibiting a change had been entered.").

In *Pierce*, the husband's change of beneficiary designation occurred years after the divorce decree had been entered. The at-

tempted change was held void because it violated an express provision in the decree. The decree required the husband to name and keep the minor children of the first marriage as beneficiaries on the policy. The insurance proceeds belonged to them.

## William's Equitable Claim

William argues that he became a vested co-owner of the policy at the time Arilla filed for divorce, by virtue of K.S.A. 23-201(b).

William does not assert that the district judge interpreted the policies incorrectly. William's sole argument on appeal is that the judge erroneously determined that he had no equitable power to grant relief. William argues that the district court's ruling conflicts with the pretrial order finding that this matter was in equity. However, the pretrial order only found that William's claim sounded in equity. The question of whether William was entitled to any equitable relief was left to the district judge to determine at trial. The district judge's ruling that "this matter is not a case in equity" resulted from his view of the legal consequences of the facts shown at trial.

William contends that the district court abused its discretion by allowing the case to proceed on an equity theory, only to decide, after all the evidence was presented, that it was not an equity case. We disagree. The manner in which the case proceeded was influenced by the facts developed at trial and the theories William pursued.

William cites *Rice v. Garrison*, 258 Kan. 142, 898 P.2d 631 (1995), for the proposition that a court has equitable power to find that a change of life insurance beneficiary is ineffective or void. Even assuming that proposition to be true, *Rice* does not add any support to William's position. We decided in *Rice* that the facts did not merit application of equitable powers: "Invalidating a deceased's designation of beneficiary on life insurance or pension benefits on equitable grounds is nothing to be undertaken lightly and would require some compelling factual situation not present herein." 258 Kan. at 154 (district court's imposition of constructive trust over life insurance proceeds and pension contributions for

the benefit of the second wife, contrary to decedent's beneficiary designation in favor of first wife, was reversed).

The ownership interest created under K.S.A. 23-201(b) in marital property is for a property division under K.S.A. 60-1610. As stated in *Wilson*, 245 Kan. at 181, if there is no divorce because of the death of a spouse, there will be no division of marital property. Absent entry of a K.S.A. 60-1607 order restraining the parties from changing beneficiaries on life insurance policies, K.S.A. 23-201(b) imposes no restrictions on either party from making such changes during the pendency of the divorce.

Affirmed.