No. 119,021

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

DANA TOWLE,
*Appellant*,

and

LOUISE LÈGARÈ,
*Appellee*.

(MATHIEU BONIN,
*Substitute Appellee*.)

SYLLABUS BY THE COURT

1.

At common law, all personal actions permanently abate upon the death of a sole plaintiff or defendant.

2.

Kansas has altered the common law rule and whether a particular cause of action survives the death of a party is to be determined by K.S.A. 60-1801. K.S.A. 60-1801 provides that in addition to the causes of action which survive at common law, causes of action for mesne profits, personal injury, property damage, deceit or fraud, and wrongful death also survive the death of a party.

3.

The law in Kansas has long recognized that a divorce action is purely personal and ends on the death of either spouse.

1

4.

A separate maintenance action is purely personal because it concerns the marriage relation and, therefore, abates upon the death of either spouse.

5.

A judgment is effective only when a journal entry or judgment form is signed by the judge and filed with the clerk of the district court.

6.

If the death of either spouse in a divorce or separate maintenance action occurs before the filing of the journal entry, such death immediately terminates the action as the district court loses jurisdiction and the parties' property settlement agreement, agreed to as part of the divorce or separate maintenance action, becomes void.

Appeal from Wyandotte District Court, TIMOTHY L. DUPREE, judge. Opinion filed March 15, 2019. Reversed and remanded with directions.

*Jonathan Sternberg*, of Jonathan Sternberg, Attorney, P.C., of Kansas City, Missouri, and *Stephanie L. Schutt*, of Ritchie & Soper PC, of Liberty, Missouri, for appellant.

*Amanda B. Kivett*, of The Kivett Law Firm, LLC, of Kansas City, Missouri, for appellee and substitute appellee.

Before BUSER, P.J., POWELL, J., and STUTZMAN, S.J.

POWELL, J.: Dana Raymond Towle petitioned the Wyandotte County District Court for separate maintenance (more commonly known as a legal separation) from his wife, Louise LèGarè. After the case had been pending for several months, Louise was diagnosed with terminal cancer. Ultimately, the parties were apparently able to reach a property settlement agreement that was placed on the record and approved by the district

2

court. The court, anticipating Louise's pending demise, filled out and signed a docket sheet approving the parties' property settlement agreement and directed Louise's counsel to prepare the journal entry. Unfortunately, several months passed and Louise died without her counsel having filed the journal entry. Dana then sought dismissal of the case on the grounds that Louise's death had abated the action and divested the court of jurisdiction. The district court denied Dana's motion to dismiss and substituted Louise's son, Mathieu Bonin, for Louise even though he was not the executor of Louise's estate. It ordered Mathieu, now represented by Louise's counsel, to submit a journal entry within 72 hours. Several more months went by without the journal entry being filed. Instead of filing a journal entry, Mathieu sought enforcement of the property settlement agreement, claiming Dana had breached it. The district court found that the parties had sufficiently memorialized their agreement and granted Mathieu's motion.

On appeal, Dana principally claims the district court erred by not dismissing the case as the action abated at the time of Louise's death. As a matter of first impression and for reasons more fully explained below, we agree with Dana that his petition for separate maintenance is a personal one which abated upon Louise's death. Because the journal entry memorializing the parties' property settlement agreement had not been approved by the district court and filed with the clerk prior to Louise's death, the district court erred in not dismissing the case. Accordingly, we reverse and remand.

FACTUAL AND PROCEDURAL BACKGROUND

A.      *Background of the Parties*

Dana and Louise were married in Missouri in the late 1980s. Louise was originally from Montreal, Quebec, where her son from a previous relationship, Mathieu, resides. During the marriage, the parties accumulated significant assets including real estate in

3

Kansas, Missouri, and Quebec and surgical centers as part of Dana's medical profession in Kansas. No children were born of the marriage.

B.      *Initiation of the Separate Maintenance Action and Dana's Voluntary Dismissal*

In November 2015, Dana filed a petition for separate maintenance in Wyandotte County District Court, alleging he was a resident of Edwardsville, Kansas. Louise filed an answer, admitting she had lived in Edwardsville for 90 days but denying that Dana had resided there. Louise asserted no counterclaims in her answer.

In May 2016, Dana and Louise agreed to a temporary order, which the district court approved, allowing the parties to live separately during the action. Among other provisions, the order provided that Dana would continue to pay Louise's living expenses, Louise would continue to possess the parties' Edwardsville residence, and no party would be dispossessed of any property without a joint written agreement or court approval. Thereafter, the parties worked with a certified public accountant, financial mediator, and valuation analyst to develop a comprehensive valuation and division of the parties' assets and debts. As of October 2016, the parties were able to develop a comprehensive list of their assets and debts, along with their agreed values. This understanding was memorialized in a one-page document known as Exhibit 101.

In June 2016, Louise was diagnosed with stage 4 metastatic lung cancer. Although Dana learned of Louise's illness in August 2016, Louise did not inform Dana of the details surrounding the diagnosis until October 2016.

On October 26, 2016, Dana's counsel filed a motion to dismiss his petition for separate maintenance without prejudice and attached a proposed order. However, because the order's title included the word "proposed," the district court clerk rejected the filing and directed Dana's counsel to correct it. The next day, Dana's counsel refiled the now

4

correctly titled order but failed to refile the motion. Dana's counsel later told the district court that the clerk's staff only told him to refile the proposed order and not the motion itself. As the district judge stated, "[E]ither [Dana's counsel] misunderstood the instruction or [was] given the wrong instruction, whichever way, but . . . there was no motion [to dismiss] filed." No such motion to dismiss appears in the record on appeal. Louise's counsel stated that she never received notice of such a motion.

Nevertheless, it appears there was such a motion before the district court at some point because on October 27, 2016, it granted Dana's motion to dismiss without prejudice and, on October 31, 2016, the district judge signed a docket entry dismissing the case. Louise's counsel admitted that these two orders were entered into the e-filing system and served on Louise; her counsel later claimed that she believed the matter was dismissed in error. After dismissal of this case, Dana filed for divorce in Jackson County, Missouri.

C.      *Setting Aside the Dismissal and Louise Filing a Counterpetition*

On March 2, 2017—122 days after the apparent dismissal of the case—Louise sought to set aside the dismissal order under K.S.A. 2016 Supp. 60-260(b). She argued the order violated K.S.A. 2016 Supp. 60-241(a) and K.S.A. 2016 Supp. 60-207(b) because Dana had not formally filed a motion to dismiss. Louise asserted that the order had to be set aside as the result of surprise, excusable neglect, misrepresentation, or misconduct by an opposing party and that Dana's dismissal was a ruse to unjustly enrich himself.

> "[Dana] misrepresented his intentions to [Louise] knowing that [her] medical condition
> prevents [her] from easily participating in the litigation process, knowing that a delay in
> the entry of the final division of assets herein and [Louise's] untimely death would allow
> [Dana] to receive all of the parties' assets herein thereby unjustly enriching [him], and
> knowing that due to the advanced nature of [Louise's] terminal cancer [she] cannot file a
> new Petition and wait the statutorily required time for entry of a Decree. . . . It is in the

5

interest of substantial justice that this Court set aside its Dismissal Order entered herein as it is necessary for [Louise] to complete the division of the parties' assets and return to her son prior to her death and as without this Court setting aside its Dismissal Petitioner shall be unjustly enriched by his misrepresentations to [Louise] and the Court."

In support of her assertions, Louise attached to her motion a three-week-old letter from her physician, which attested to her condition and stated she "desire[d] to return to her family and home in Montreal, Canada for her remaining months of life" and "it is of the most urgent necessity that she gets her divorce settled so that she has funds to move, get medical care, and live with her family that can support and care for her." Dana opposed Louise's request to set aside the dismissal. Although he denied many of her allegations, he did admit that the motion to dismiss was not correctly filed. Before the district court heard arguments on Louise's motion to set aside the dismissal, and without leave of the court, on March 6, 2017, Louise filed what her counsel entitled as a "Counter Petition for Legal Separation."

After hearing arguments on March 27, 2017, concerning Louise's motion to set aside the order of dismissal, the district court found that because Dana had not properly filed a motion to dismiss, it did not have the authority to grant Dana's motion of voluntary dismissal under K.S.A. 2016 Supp. 60-241. Dana then made an oral motion to dismiss the action. In response, Louise argued Dana could not now voluntarily dismiss the action because she had filed a "counterpetition." Dana responded that Louise's counterclaim was out of time and she would need leave of the district court to amend her answer, which she had not done. Louise argued that her "counterpetition" was timely without leave; Dana refuted this assertion, arguing that a counterclaim could be filed only in an answer to the original petition, which at this point was now several years after the initial November 2015 filing. Thus, Louise was out of time to amend her answer without leave of the court.

6

Nevertheless, the district court, sua sponte, asked Louise, "[A]ssuming the requirement would be 21 days after the petition, what would your arguments be . . . as far as being given the opportunity to file your counterclaim out of time?" Louise responded that the parties had been negotiating and she expected to resolve the case through that negotiation; however, the parties had not yet resolved the case, so she needed to file her "counterpetition." The district judge stated that he was not 100% sure of a deadline or requirement for filing a counterclaim, but even assuming there was, he found there was an exception under the circumstances of this case and allowed Louise to amend her answer to include a counterclaim for separate maintenance out of time as of March 27, 2017. The district court then permitted Dana to withdraw his oral motion to dismiss and set the case for trial on April 18, 2017. Subsequently, Dana timely filed an answer to Louise's counterclaim.

D.    *The April 2017 Hearing*

At the April 2017 hearing, the parties announced they had reached an agreement on the division of property and spousal support. Dana testified and confirmed the division of assets and debts, including his agreement to pay Louise maintenance. Dana also agreed to pay a $227,000 equalization payment to Mathieu, if that was who Louise designated as her heir. Dana also agreed to dismiss the pending Missouri divorce case within 10 days. Louise also testified and confirmed the agreement. The parties had reduced the division of assets and debts to writing in Exhibit 101.

The district court accepted the parties' settlement and stated it would "do simply a short docket sheet of today's hearing. It won't lay out anything, but I will attach [Exhibit 101] to be filed with the docket sheet." The district judge asked, "Do we need to make any specific findings concerning the legal separation of this matter?" Louise's counsel replied that findings regarding the legal separation were not necessary but there should be

detailed findings or a proposed journal entry regarding certain property and the maintenance payments. Dana's counsel agreed that a detailed journal entry was necessary.

The district court found the agreement was "made in fair negotiations" and was "equitable" and "fair," stated it adopted the agreement of the parties as its own, made it the order of the court effective that day, and filled out a docket sheet reflecting such. Regarding the journal entry, the district judge stated:

> "You can make it however you want it, and, if you want to attach a copy of this to the journal entry, and just have the parties sign it after this is attached to it or make this supplemental to it and then make it as detailed as you would like.

> "I mean, pretty much this is my order and whatever you-all agree to as long as it's consistent with this whatever format you put it in, doesn't make me any big bit of difference."

Counsel for both parties discussed wanting to list every maintenance payment and detailing each property with the legal description. Louise's counsel requested 10 days to file the proposed journal entry, and the district judge responded,

> "That's fine, however long it takes. What we're going to do is do a docket sheet today. Essentially, I'll attach [Exhibit 101] to it, and we'll have a record. My order is effective as of today.

> "So even if she, God forbid, passes prior to the journal entry, the order is effective when given. So we'll just wait on that."

The district court then completed a docket sheet that read as follows:

> "Parties reach agreement and presents [*sic*] testimony of agreement. [Louise] introduces Exhibit 101, which is an agreed spreadsheet of all property owned by the parties.

8

"After hearing all testimony and the agreements of the parties the court finds the agreement to be fair and equitable. The court adopts the agreement, and makes it the court's order. [Louise] to prepare [a journal entry] of today's hearing. [Louise's] Exhibit 101, attached hereto, is adopted as [the] entire property list of the parties."

Dana later dismissed the Missouri divorce case.

E.  *Louise's Death, the Denial of Dana's Second Motion to Dismiss, and Substitution of Mathieu for Louise*

On July 1, 2017, Louise died. At the time of Louise's death, her counsel still had not filed the court-ordered journal entry.

In a letter to the court on July 5, 2017, Dana's counsel reported that he and Louise's counsel had agreed he would draft the journal entry and forward it to her, which he had done on May 8, 2017, but he never heard back from Louise's counsel. Dana's counsel argued "the failure to have a signed journal entry at the time of the death of one of the parties, resulted in the parties still being married and the court being unable to enter a journal entry following the death of one of the parties." Dana asked the court to take no further action and dismiss the matter due to the passing of Louise.

On July 14, 2017, Dana filed proof of Louise's death; five days later, he sought to dismiss the action, arguing that under K.S.A. 2017 Supp. 60-258 the failure to have a journal entry on file at the time of Louise's death meant the separate maintenance or legal separation action abated at that time, so the action had to be dismissed. Louise's counsel opposed the motion for dismissal but did not make any specific counterarguments in support of her objection.

9

On August 31, 2017, Louise's counsel and Dana appeared at a hearing on Dana's motion to dismiss. Before hearing argument on that motion, Louise's counsel made an oral motion under K.S.A. 2017 Supp. 60-225(a) to substitute Mathieu as a successor or a representative of Louise's interests. Louise's counsel informed the court that Mathieu retained her on July 31, 2017, and argued that K.S.A. 2017 Supp. 60-225(a) was very clear that once a motion for substitution of a party is made by the successor or representative, the district court must grant the motion. Dana opposed this oral motion for substitution, arguing that the action and Louise's claim extinguished on her death, so no one could be substituted for her at all, and even if the claim was not extinguished, only Louise's estate could be substituted for Louise under K.S.A. 2017 Supp. 60-225(a). Mathieu confirmed at a later hearing that he was not Louise's executor. Notwithstanding, the district court granted the motion and substituted Mathieu for Louise.

The district court then heard Dana's motion to dismiss. Dana testified and acknowledged that he and Louise had reached a separation agreement, that he had made payments to Louise of $5,000 per month both before and after the April 2017 hearing, and that he had paid her credit card bills both before and after the April 2017 hearing.

After Dana's testimony, his counsel argued that the case had to be dismissed because the district court lost jurisdiction upon Louise's death as there had been no journal entry filed in the case memorializing the parties' agreement. Mathieu opposed the motion, arguing that a journal entry is a record of the judgment but is not the judgment itself and that it was clear from the April 2017 hearing that there was an oral binding agreement placed on the record that the district court had adopted. Additionally, Mathieu argued the district court's docket sheet was sufficient to constitute a judgment form that also qualified as the entry of a judgment.

The district judge denied Dana's motion to dismiss, stating, "I do believe the docket sheet as referred to by [Mathieu's] counsel in his arguments, it does, in fact,

10

contain the requisite information that a journal entry will contain absent the specific details." The district judge further commented "that this Court itself expedited matters and moved other hearings and cases out of the way because of [Louise's] illness to try to bring a final conclusion to this matter prior to her death" and "what this Court expected was a more thorough, more exhaustive journal entry." The district court also remarked "in hindsight, perhaps we did not do it according to the rule of law and if that be the case, then the Court of Appeals will make the right decision and I'll be reversed and [Dana] will have the benefit of the law." Mathieu's counsel offered to submit a proposed journal entry memorializing the agreement but replacing Louise's name with Mathieu's. The district court agreed and ordered Mathieu's counsel to submit the journal entry within 72 hours.

F.      *Mathieu's Claim for Enforcement of the Marital Settlement Agreement*

Surprisingly, Mathieu's counsel failed to file the court-ordered journal entry within 72 hours, and by mid-September 2017 there still was no journal entry filed. Instead, on September 14, 2017, Mathieu's counsel filed a document entitled "Counter Petition for Enforcement of Marital Settlement Agreement," alleging breach of contract, unjust enrichment, and equitable estoppel claims again Dana. Specifically, Mathieu alleged that Dana had breached the April 2017 separation agreement and Mathieu, as Louise's successor, was owed damages, attorney fees, and costs. Dana denied and opposed all of these claims, arguing in part that there was no enforceable agreement once Louise died without a journal entry having been entered. Additionally, despite the district court's previous denial of Dana's motion to dismiss, Mathieu's counsel filed arguments in opposition to Dana's motion to dismiss and, alternatively, asked the district court to enter a judgment nunc pro tunc "to correct any error necessary to give the court's order and judgment full force and effect as of April 18, 2017, as ordered on April 18, 2017."

11

On November 15, 2017, the district court held a hearing on these motions. First, the district judge denied Mathieu's request for a nunc pro tunc order, stating that while he had intended for the April 2017 docket sheet to be a final decision, he had been ignorant of the law requiring a journal entry. The district court indicated that the docket entry was not a journal entry or a judgment form but was a trial docket or a docket sheet; the district court had expected a journal entry; and if the docket entry was final, then the district court had not given any notice to the parties of the right to appeal that entry. Nevertheless, the district court again refused to dismiss the case due to Louise's death and instead took up Mathieu's request to enforce the settlement agreement.

Both Dana and Mathieu testified. Dana did not dispute that since the April 2017 hearing he had taken care of the properties assigned to him in Exhibit 101; that Louise had resided in one of the Canadian properties assigned to her until her death; that he had paid her credit card bills, her maintenance, and paychecks; and that he had dismissed his Missouri divorce action. However, Dana also testified that it was not his "understanding that every single little detail [of the agreement] was laid out in front of this court" at the April 2017 hearing and that several details of the agreement missing from the testimony provided at that time would have been reduced to writing in the journal entry. Dana contended that the agreement was never reduced to a formal writing because he and his attorneys proposed a full written agreement in the form of a journal entry but Louise and her counsel never approved it or submitted it to the court.

Mathieu testified that he had contact with Dana after the April 2017 hearing and before Louise's death and Dana never told him there were documents that needed to be signed by Louise to finalize anything. Mathieu also testified that Louise informed him there had been an agreement reached, but Dana had never told him this nor had he ever seen Exhibit 101 or an agreement.

The district court found there had been a meeting of the minds between Dana and Louise at the April 2017 hearing, found the disposition of all the property was testified to on that date, and granted Mathieu's motion to enforce the property settlement agreement. It ordered that a journal entry reflecting the agreement be prepared by Mathieu's counsel and that the journal entry include not only Exhibit 101 but also every aspect of the agreement that was testified to at the April 2017 hearing.

G.    *Final Actions and Filing of the Journal Entry in the District Court*

By February 2018, no journal entry had yet been filed. So, on February 14, 2018, Dana moved for a mistrial or alternatively to dismiss the case. This motion finally prompted Mathieu's counsel to act, and on February 22, 2018, Mathieu's counsel submitted a proposed journal entry, which the court signed without amendment. The journal entry denied Dana's July 2017 motion to dismiss; outlined what property and debts Dana and Louise were to receive; ordered Dana to pay Louise an equalization payment of $227,000 payable over 15 years at 2% annual interest with a balloon payment at the end of the equalization payments totaling 5 years' worth of payments; ordered Dana to pay nonmodifiable maintenance of $5,000 a month until November 2026 or upon the death of either party; and ordered Dana to dismiss his Missouri action. Exhibit 101 was also attached to the order.

Dana timely appeals.

DID THE DISTRICT COURT ERR IN DENYING DANA'S
MOTION TO DISMISS AFTER LOUISE'S DEATH?

Dana's principal argument on appeal is that the district court erred in not granting his July 2017 motion to dismiss. Specifically, he argues that because Louise died before a final journal entry had been entered in the case, the separate maintenance action abated

upon her death and, therefore, the district court was divested of jurisdiction. Mathieu argues that a civil action does not automatically terminate upon the death of a party and that the court properly proceeded on Mathieu's claim for enforcement of the property settlement agreement as an oral contract. Whether jurisdiction exists is a question of law over which we exercise unlimited review. *In re Care & Treatment of Emerson*, 306 Kan. 30, 34, 392 P.3d 82 (2017).

A.      *Does an action for separate maintenance abate upon the death of one of the parties?*

At common law, all personal actions permanently abate upon the death of a sole plaintiff or defendant. 1 Am. Jur. 2d Abatement, Survival, and Revival § 44; see 1 C.J.S., Abatement and Revival § 132 (a pending action abates upon death of either party at common law unless altered by statutory enactment). Kansas has altered the common law rule, and according to our Supreme Court, "whether a particular cause of action survives the death of a party is to be determined by K.S.A. 60-1801." *Gross v. VanLerberg*, 231 Kan. 401, 405, 646 P.2d 471 (1982). K.S.A. 60-1801 states:

> "In addition to the causes of action which survive at common law, causes of action for mesne profits, or for an injury to the person, or to real or personal estate, or for any deceit or fraud, or for death by wrongful act or omission, shall also survive; and the action may be brought notwithstanding the death of the person entitled or liable to the same."

The most fundamental rule of statutory construction "is that the intent of the legislature governs if that intent can be ascertained." *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 659, 367 P.3d 282 (2016). When a statute is plain and unambiguous, we should not speculate about the legislative intent behind that clear language and should refrain from reading something into the statute that is not readily found in its words. See *Ullery v. Othick*, 304 Kan. 405, 409, 372 P.3d 1135 (2016).

14

According to the plain language of K.S.A. 60-1801, all actions at common law that survive the death of a party, plus those listed in the statute, do not abate upon the death of a party. But because personal actions at common law do abate, the question is whether an action for separate maintenance is a personal one.

The law in Kansas has long recognized that "[a] divorce action is purely personal and ends on the death of either spouse." *Wear v. Mizell*, 263 Kan. 175, 180, 946 P.2d 1363 (1997); see *Adamson v. Snider*, 131 Kan. 284, 285, 291 P. 744 (1930) ("The principal point to be determined in an action for divorce is the marital status of the parties, and after the death of one of them that is no longer open to litigation."); see also *In re Marriage of Wilson*, 245 Kan. 178, Syl. ¶ 2, 777 P.2d 773 (1989) ("In an action for divorce, when a party dies after the divorce is orally granted but prior to the requested journal entry of judgment being signed by the trial judge and filed with the clerk of the district court, it is held that K.S.A. 60-258 renders the divorce decree ineffective."). In short, "[a] divorce action abates at the time of death." *Wear*, 263 Kan. at 180.

A century ago, the Illinois Supreme Court discussed the personal nature of a divorce action and its similarities with a separate maintenance action for the purposes of abatement:

> "Marriage is a personal relation or status, created under the sanction of law, and an action for divorce is a proceeding brought for the purpose of effecting a dissolution of that relation. The action is one of a personal nature. In the absence of a statute to the contrary, the death of one of the parties to such action abates the action, for the reason that death has settled the question of separation beyond all controversy and deprived the court of jurisdiction, both over the persons of the parties to the action and of the subject-matter of the action itself. For this reason the courts are almost unanimous in holding that the death of either party to a divorce proceeding, before final decree, abates the action.

15

"While the present action is one for separate maintenance, and differs from a divorce proceeding, in that the latter is one for dissolution of the marriage relation, while the former is one in affirmance of it and to enforce the obligations of that relation, they are both, nevertheless, similar in their nature, as the marriage relation constitutes the foundation of the action in each case, and the dissolution of that relation extinguishes the subject-matter which forms the basis for such an action." *Bushnell v. Cooper*, 289 Ill. 260, 264-65, 124 N.E. 521 (1919).

Under K.S.A. 23-2701 and K.S.A. 23-2706, both the grounds and the remedies for divorce and separate maintenance are the same. But unlike a divorce, an action for separate maintenance does not terminate the marriage but allows the parties to live separate and apart. Like in a divorce, in a separate maintenance action, the court may order or the parties may agree to determine property and inheritance rights. See 1 Kan. Law & Prac., Family Law § 9:58 (2018). Given that the nature of a spousal maintenance action is very similar to a divorce action, and its essence is personal as it allows for a married couple to live separately, we hold that a separate maintenance action is a personal one that abates at the time of a party's death. This finding is in accord with other jurisdictions which have considered the question. See, e.g., *In re Marriage of Hilke*, 4 Cal. 4th 215, 220, 14 Cal. Rptr. 371, 841 P.2d 891 (1992) (action for legal separation or dissolution is personal and abated at spouse's death); *Bushnell,* 289 Ill. at 264-65 (separate maintenance action abates upon death of a spouse); *Cregan v. Clark*, 658 S.W.2d 924, 927 (Mo. App. 1983) ("[A] suit for dissolution or for legal separation abates upon the death of one of the parties before final judgment."); *Trinosky v. Johnston*e, 149 N.M. 605, 608, 252 P.3d 829 (Ct. App. 2011) ("[U]nder the common law rule of abatement, if a party to a legal separation action died prior to entry of a final decree, the court was divested of jurisdiction over the matter.").

Accordingly, just as in a divorce, if either spouse in a separate maintenance action dies prior to the filing of a final journal entry, the separate maintenance action abates upon the death of that spouse and the district court loses jurisdiction.

B.      *Was there a legally sufficient journal entry filed in the case prior to Louise's death?*

The next question is whether Louise died before a journal entry was entered. If there was a journal entry entered before the death of Louise, then her death would be inconsequential to the enforceability of the property settlement agreement. Although it involves a divorce action, *In re Marriage of Wilson*, 245 Kan. at 178-79, illustrates the importance of determining if a binding journal entry was entered before the death of a party. In *Wilson*, at the divorce hearing the parties verbally agreed on a property settlement, child custody, child support, and maintenance. The district court then "orally granted a divorce to each party and accepted the parties' stipulation as to their agreement on the balance of the issues" and directed wife's counsel to prepare the journal entry. 245 Kan. at 179. The journal entry was filed with the district court approximately 30 days later. However, nine hours before the court entered that journal entry, the husband died. The wife then requested to be relieved from the decree. The district court agreed with the wife, set aside the journal entry, and dismissed the action, holding that under K.S.A. 60-258 the parties were still married at the time of the husband's death and so the journal entry was void. The administrator of the husband's estate appealed.

The Kansas Supreme Court ultimately unanimously affirmed the district court, holding:

> "The 1976 amendment [to K.S.A. 60-258] unequivocally states that no judgment is effective until a journal entry or the judgment form is signed and filed. A journal entry was requested by the trial court herein. The decision of the trial court could not become effective prior to its filing by the express language of K.S.A. 60-258. If the decision of the trial court granting the divorce could not become effective prior to the filing of the journal entry, then it was ineffective prior to that time. [Husband] died prior to the trial court's approval of, and the filing of, the journal entry. At the time of his death, [Husband] was lawfully married to [Wife]. His death terminated that marriage.

17

Accordingly, there was no marriage for the decree of divorce to terminate at the time the journal entry reflecting the judicial termination was filed. [Wife] was [Husband's] widow at the time the journal entry was signed and filed. We must conclude that the majority opinion of the Court of Appeals correctly affirmed the trial court's setting aside of the journal entry granting a decree of divorce." 245 Kan. at 180-81.

Further, the Supreme Court held that the parties' oral agreement to the division of property and debts, orally approved of by the district court, was not effective absent a journal entry:

> "'Although separation agreements are authorized by statute, K.S.A. 1988 Supp. 60-1610(b)(3), division of property and apportionment of debt are not necessary where the parties are not divorced. K.S.A. 60-258 renders the divorce decree ineffective in this case; therefore, the agreement incorporated therein must also be ineffective. If there is no divorce, there is no division of marital property.' 13 Kan. App. 2d at 294." 245 Kan. at 181.

Other Kansas cases dealing with the entry of journal entries or judgment forms have held similarly to *Wilson*—if the death of a spouse comes before the journal entry is entered, the case abates; if the death of a spouse comes after the journal entry is entered, the case does not abate. See *Wear*, 263 Kan. at 180 (holding divorce action abated when husband died before filing of journal entry); *Great Plains Trust Co. v. Wallins*, No. 99,483, 2008 WL 5135043, at *3 (Kan. App. 2008) (unpublished opinion) (holding divorce case ended when the husband died before journal entry entered); *In re Marriage of Gilchrist*, No. 91,029, 2004 WL 1716204, at *3 (Kan. App. 2004) (unpublished opinion) (holding husband could not seek to set aside judgment and relitigate child support and other issues because "trial court lost subject matter jurisdiction over the divorce case when [the wife] died").

18

And these holdings align with the mandate from K.S.A. 2016 Supp. 60-258 that "[n]o judgment is effective unless and until a journal entry or judgment form is signed by the judge and filed with the clerk."

Yet, here, the question before us contains a unique wrinkle: The district judge filled out a docket sheet that was used to add line entries in the district court's register of actions and record minutes of what transpired during a proceeding before the district court. The docket sheet read:

> "Parties reach agreement and presents [*sic*] testimony of agreement. [Louise] introduces Exhibit 101, which is an agreed spreadsheet of all property owned by the parties.
>
> "After hearing all testimony and the agreements of the parties the court finds the agreement to be fair and equitable. The court adopts the agreement, and makes it the court's order. [Louise] to prepare [a journal entry] of today's hearing. [Louise's] Exhibit 101, attached hereto, is adopted as [the] entire property list of the parties."

Louise's counsel never filed a journal entry prior to her client's death.

> "The law in Kansas is clear that a case is not final until there is no possibility of further court action. The effective date of a journal entry is when it is signed by the trial judge and filed with the clerk of the district court. A journal entry containing findings of fact and conclusions of law takes precedence over and may differ from the trial court's oral pronouncement from the bench. A judgment that has been orally pronounced but that lacks a journal entry is therefore not a final judgment. [Citations omitted.]" *Valadez v. Emmis Communications*, 290 Kan. 472, 482, 229 P.3d 389 (2010).

Thus, we must determine if the district court's docket sheet is sufficient to qualify as a journal entry or judgment form under K.S.A. 2016 Supp. 60-258. A judgment is effective only when a journal entry or judgment form has been signed by the judge and

19

filed with the clerk of the district court. 290 Kan. at 482. Importantly, trial docket minute sheets do not comply with K.S.A. 2016 Supp. 60-258. See *Wilson*, 245 Kan. at 180-81.

Although the docket sheet or minute sheet in this case bears the signature of the district judge, this document was never filed with the clerk of the district court. It bears no file stamp. Moreover, while the docket sheet states it adopted the agreement of the parties as the court's order, actually, there is no indication in the docket sheet of the substance of the parties' agreement apart from an exhibit listing the property of the parties. There is nothing regarding the settlement figure testified to, maintenance, living expenses, or the dismissal of the Missouri divorce action. The docket sheet itself even orders a journal entry to be prepared and filed. Notably, the district judge himself conceded that this was not a journal entry but "was a trial docket or what we call here in Wyandotte County a docket sheet" and that the court had "expected another document that would have the title journal entry on the document." Under the facts presented here, the docket sheet did not qualify as a final journal entry or judgment form.

Because the district court's docket sheet was insufficient to stand in place of a journal entry or judgment form and because Louise died before any final journal entry was filed, Dana's separate maintenance action abated upon Louise's death and the district court lost subject matter jurisdiction over the case. The district court erred in denying Dana's motion to dismiss filed after Louise's death.

The judgment of the district court is reversed, and the case is remanded with instructions for the district court to dismiss the case. The other issues raised by Dana are moot, and we express no opinion as to their propriety.

Reversed and remanded with directions.

20